United States Court of Appeals
Fifth Circuit

**F I L E D**

**March 29, 2007**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

No. 05-20068

TAMI J. AMEEN, MARCUS ENARD,

Plaintiffs

TAMI J. AMEEN,

Plaintiff - Appellant

versus

MERCK & CO., INC., DEBORAH K.
WINN, ROBERT F. YOUNG, ALEX
N. PETROVICH, and BOBBY GRIFFIN,

Defendants - Appellees

Appeal from the United States District Court
for the Southern District of Texas
(No. 04:03-CV-3587)

Before GARWOOD, WIENER, and CLEMENT, Circuit Judges.

PER CURIAM:[*]

Plaintiff-Appellant Tami Ameen ("Ameen" or "Appellant"), a

former employee of Defendant-Appellee Merck & Co., Inc. ("Merck"),

brought an action in Texas state court against Defendants-Appellees

Merck, Deborah K. Winn, Robert F. Young, Alex N. Petrovich, and

Bobby Griffin, (collectively, "Appellees") in which she alleged ten

causes of action under Texas law resulting from the termination of

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that
this opinion should not be published and is not precedent except
under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

her employment at Merck. Appellees removed the case pursuant to 28 U.S.C. §§ 1332 and 1441, contending that the individual defendants had been improperly joined to defeat diversity jurisdiction. Ameen filed a motion to remand, which the district court denied, also dismissing all of Ameen's state law claims against the individual defendants. The district court later granted Merck's summary judgment motion to dismiss Ameen's retaliation claim, her sole remaining cause of action. Ameen appeals both orders. We affirm.

## I. Facts and Proceedings

Merck, one of the world's largest pharmaceutical companies, uses sales representatives ("reps") to sell its products to physicians and hospitals. As part of their responsibilities, Merck's reps conduct health education liaison ("HEL") programs, which usually include social activities for doctors or other health care providers. Merck maintains detailed policies and regulations governing the administration of its HEL programs, including limits on the dollar amount that may be spent per physician. One of Merck's policies specifies that "[t]he failure of any employee to adhere strictly to both the letter and spirit of these general principles will result in appropriate action, up to and including dismissal from employment."

Ameen, a resident of Texas, was employed by Merck for almost fourteen years. At the time of her termination, she was an executive senior representative, the highest sales position within

the company.  Defendant Deborah K. Winn, Ameen's immediate supervisor, was responsible for screening potential candidates for the rep positions.  She set up a team to screen applicants and asked Ameen to chair the team.  Ameen has alleged that, as a member of the screening team, she observed Winn engage in discriminatory employment practices.  On one occasion, for example, Winn indicated she did not want to hire an applicant because he "spoke too black"; on another, she referred to an applicant as an "old man" and indicated that he was too old to work at Merck.  These practices ultimately led to the filing of charges by the rejected applicants with the Equal Employment Opportunity Commission (the "EEOC"), which investigated and substantiated the claims.

Ameen asserts that she reported discriminatory hiring practices to Defendant Alex N. Petrovich, Winn's supervisor, in August or September 2000; Petrovich denies that Ameen informed him of these practices.  In February 2001, Petrovich awarded Ameen a discretionary $3,000 bonus.  In April 2001, Petrovich approved Ameen's overall rating of "exceeds expectations" in her performance review.  Petrovich also granted Ameen a 2-month sabbatical so that she could spend time with her family in the summer of 2001.

At the end of May 2001, Petrovich conducted an exit interview with a departing sales representative, who informed him that Merck's reps had been falsifying reports for HEL programs.  After Petrovich asked Winn to investigate, she determined that Ameen had falsified HEL reports, enabling her to make inappropriate payments

3

to doctors.  Petrovich then conducted his own investigation.  Early in August 2001, Petrovich interviewed Ameen, and she acknowledged that she repeatedly violated Merck policy by submitting false expense information to obtain funds that she in turn gave to doctors.  Petrovich decided that day to terminate Ameen, stating his reason for the dismissal as Ameen's falsifications of HEL program expense reports in violation of Merck policy.

More than a year later, in November 2002, Ameen filed this action in state court against Appellees seeking damages for specified state law causes of action.  The individual defendants are, like Ameen, residents of Texas.  In her complaint, Ameen alleged retaliation, intentional infliction of emotional distress, tortious interference with her at-will employment contract, negligence, negligent misrepresentation, vicarious liability, defamation, civil conspiracy, promissory estoppel, and false imprisonment under Texas law.  Appellees removed the case to federal court based on diversity jurisdiction, contending that the in-state defendants had been improperly joined.  When Ameen filed a motion to remand the case to state court, the district court denied her motion without explanation.

After Ameen's motion to remand was denied, Merck filed a motion for summary judgment.  In granting Merck's motion, the district court held that, with respect to the surviving retaliation claim, Ameen had not demonstrated a causal connection between any protected activity and her termination.  The court further held

4

that, even if she had been able to make a prima facie case of retaliation for her having engaged in a protected activity, Ameen could not defeat Merck's legitimate nondiscriminatory reason for termination, as she had failed to demonstrate that "but for" retaliation she would not have been terminated. Ameen timely filed a notice of appeal.

## II. ANALYSIS

### A. Subject Matter Jurisdiction

#### 1. Standard of Review

All questions of subject matter jurisdiction, including the denial of a motion for remand to state court and a determination that a party is improperly joined, are questions of law reviewed <u>de novo</u>.[1] We review a district court's decision to pierce the pleadings and its procedure for determining improper joinder only for abuse of discretion.[2]

#### 2. Removal

Under 28 U.S.C. § 1441(a), a defendant may remove from state court to federal court any civil action over which the federal courts have original jurisdiction. When jurisdiction is based on diversity, however, a defendant may remove "only if none of the

---

[1] <u>Crockett v. R.J. Reynolds Tobacco Co.</u>, 436 F.3d 529, 531 (5th Cir. 2006); <u>McDonal v. Abbott Labs.</u>, 408 F.3d 177, 182 (5th Cir. 2005).

[2] <u>Guillory v. PPG Indus., Inc.</u>, 434 F.3d 303, 309 (5th Cir. 2005).

parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought."[3] Even though Ameen and the individual defendants are citizens of Texas, where this action was brought, Appellees contend that removal was nevertheless proper because, they insist, the individual defendants were improperly joined.

To demonstrate improper joinder of resident defendants, a diverse defendant must demonstrate either: "(1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court."[4] As Appellees rely only on Crockett's second prong in this case, we must determine whether "there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant."[5]

The burden of proof is on the Appellees as the removing parties.[6] In deciding whether a party was properly joined, the court must resolve all contested factual issues and ambiguities in state law in the non-removing party's favor.[7] As "the effect of

---

[3]    28 U.S.C. § 1441(b).

[4]    Crockett, 436 F.3d at 532 (quoting Travis v. Irby, 326 F.3d 644, 646-47 (5th Cir. 2003)).

[5]    Smallwood v. Ill. Cent. R.R. Co., 385 F.3d 568, 573 (5th Cir. 2004) (en banc), cert. denied, 566 U.S. 992 (2005).

[6]    Guillory, 434 F.3d at 308.

[7]    Id.

6

removal is to deprive the state court of an action properly before it, removal raises significant federalism concerns . . . ."[8]  The removal statute is therefore to be strictly construed, and any doubt as to the propriety of removal should be resolved in favor of remand.[9]

### 3.    Propriety of Removal

Ameen challenges the removal from the state court on three principal grounds: (1) The notice of removal was not timely filed, (2) the district court abused its discretion when it pierced the pleadings, and (3) the district court erred in determining that Ameen had no basis for recovery against the individual defendants. Each of these challenges fails.

### a.    Timeliness of Removal

Appellees did timely remove the complaint.  Under 28 U.S.C. § 1446(b),

> [i]f the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or <u>other paper</u> from which it may first be ascertained that the case is one which is or has become removable . . . .[10]

Although Appellees did not remove within 30 days following the

---

[8]    <u>Carpenter v. Wichita Falls Indep. Sch. Dist.</u>, 44 F.3d 362, 365-66 (5th Cir. 1995) (citations omitted).

[9]    <u>Acuna v. Brown & Root Inc.</u>, 200 F.3d 335, 339 (5th Cir. 2000); <u>Carpenter</u>, 44 F.3d at 366.

[10]    28 U.S.C.§ 1446(b) (emphasis added).

7

filing of Ameen's complaint, they did remove within 30 days following Ameen's deposition.[11]  A deposition may "constitute[] a new paper or event that changed the facts regarding the removableness of the case."[12]  Appellees' contention that Ameen had no basis for recovery against the individual defendants relies on facts first revealed in her deposition testimony.  Accordingly, removal was timely, as Appellees removed within 30 days of becoming aware that the case might be removable.

### b.  Piercing the Pleadings

Ameen challenges the procedure used to decide the motion for remand, contending that the district court improperly conducted a summary inquiry into the evidence.[13]  Ameen relies on Smallwood v. Illinois Central Railroad Co.'s instruction that, for purposes of removal, use of discovery should be limited.[14]  It is true that, "[o]rdinarily, if a plaintiff can survive a Rule 12(b)(6)

---

[11]    Ameen was deposed on August 7, 2003.  Appellees removed on September 8, 2003.

[12]    S.W.S. Erectors, Inc. v. Infax, Inc., 72 F.3d 489, 494 (5th Cir. 1996).

[13]    "[A] summary inquiry is appropriate only to identify the presence of discrete and undisputed facts that would preclude plaintiff's recovery against the in-state defendant."  Smallwood, 385 F.3d at 573-74.  Although the district court did not articulate a basis for the denial of a motion to remand, she evidently did consider the exhibits.

[14]    Id. at 574 (discovery should be "on a tight judicial tether").

8

challenge, there is no improper joinder."[15] Nevertheless, there are cases in which a summary inquiry is appropriate. In <u>Guillory v. PPG Industries, Inc.</u>, for example, we upheld the district court's piercing of the pleadings when the parties had conducted ten months of post-removal discovery.[16]

Here, Ameen's deposition testimony provided the foundation for the removal, as her deposition was the "new paper or event that changed the facts regarding the removableness of the case."[17] As such, the district court would have been unable to appreciate fully the basis for its possible jurisdiction without examining the deposition. <u>Smallwood</u> does not require a different result. It and its progeny have explicitly allowed limited discovery in determining improper joinder, particularly when, as here, the

---

[15]    <u>Id.</u> at 573.  As we cautioned in <u>Smallwood</u>,

> Attempting to proceed beyond this summary process carries a heavy risk of moving the court beyond jurisdiction and into a resolution of the merits, as distinguished from an analysis of the court's diversity jurisdiction by a simple and quick exposure of the chances of the claim against the in-state defendant alleged to be improperly joined. Indeed, the inability to make the requisite decision in a summary manner itself points to an inability of the removing party to carry its burden.

<u>Id.</u> at 574.

[16]    434 F.3d at 311.

[17]    <u>S.W.S. Erectors, Inc.</u>, 72 F.3d at 494.

9

discovery forms the basis for the removal.[18]  Accordingly, the district court's decision to consider the deposition was not an abuse of discretion.  Indeed, denial of remand in this case is consistent with our holding in Smallwood.[19]  There, we held en banc that "[w]hen the only proffered justification for improper joinder is that there is no reasonable basis for predicting recovery against the in-state defendant, and that showing is equally dispositive of all defendants rather than to the in-state defendants alone, the requisite showing has not been made."[20]  We explained that when a showing "compels a holding that there is no reasonable basis for predicting that state law would allow the plaintiff to recover against the in-state defendant necessarily compels the same result for the nonresident defendant, there is no improper joinder; there is only a lawsuit lacking merit."[21]

In the instant case, the district court indicated in its decision granting summary judgment that it had considered the moving papers on the motion for remand, and that it "now determines

---

[18]    Guillory, 434 F.3d at 311 (Smallwood "sharply limits, but does not eliminate, discovery."); Smallwood, 385 F.3d at 574.

[19]    Although the parties did not fully brief this issue, we must consider it as it goes to whether the federal courts have subject matter jurisdiction over this case.  See McDonal, 408 F.3d at 182-83 (if court lacks subject matter jurisdiction, case must be remanded to state court).

[20]    Smallwood, 385 F.3d at 575.

[21]    Id. at 574.

10

that Defendant Merck is also entitled to judgment as a matter of law on all of Plaintiffs' claims." This case is nevertheless distinguishable from Smallwood, as the retaliation claim against Merck survived the motion for remand. Although Ameen sued the individual defendants for retaliation in violation of the Texas Commission on Human Rights Act, she concedes that she has no such cause of action against them. Several post-Smallwood cases have instructed that "if a district court concludes that the common defense proffered would not dispose 'of every claim against every defendant, [the district court] should continue to deny remand and proceed with the proper disposition of the case.'"[22] Thus, Smallwood's "common defense" rule does not apply here because Ameen's retaliation claim against Merck was denied on grounds independent of those for dismissing her causes of action against all other Appellees.[23]

### c. Basis for Recovery on State Law Claims

Ameen challenges the district court's conclusion that she had no basis for recovery against the individual defendants under state law. Ameen alleged eight Texas law causes of action against the individual defendants: (1) defamation; (2) civil conspiracy; (3) tortious interference; (4) intentional infliction of emotional

---

[22]  McDonal, 408 F.3d at 184 (quoting Rainwater v. Lamar Life Ins. Co., 391 F.3d 636, 638-39 (5th Cir. 2004) (per curiam)).

[23]  See Rainwater, 391 F.3d at 638.

11

distress; (5) negligence; (6) negligent misrepresentation/ promissory estoppel; (7) false imprisonment; and (8) retaliation.[24]

### (i) Defamation

To state a claim for defamation of a non-public figure under Texas law, a plaintiff must demonstrate that the defendant published a defamatory statement about him while acting with negligence regarding the truth of the statement.[25] To recover on such a claim, the plaintiff must identify the alleged defamatory statement and the speaker.[26] Texas defamation claims are subject to a one-year statute of limitations,[27] which period begins to run when a plaintiff discovers, or should have discovered, that the defamatory statement was made.[28]

Ameen points to numerous allegedly defamatory statements made by the individual defendants and known to Ameen in or around August 2001. Ameen did not file her complaint until November 2002, more than a year after she discovered these statements had been made.

---

[24] Ameen concedes that she has no cause of action against the individual defendants on her retaliation claim.

[25] WFAA-TV, Inc. v. McLemore, 978 S.W.2d 568, 571 (Tex. 1998).

[26] See Abbott v. Pollock, 946 S.W.2d 513, 520 (Tex. App.——Austin 1997, pet. denied) (holding that appellants failed to raise material issue of fact when they relied on their belief that appellee or his employees had spoken disparagingly about them).

[27] TEXAS CIV. PRAC. & REM. CODE § 16.002.

[28] Newsom v. Brod, 89 S.W.3d 732, 736 (Tex. App.——Houston [1st Dist.] 2002, no pet.).

Her claim is therefore time-barred to the extent that it is based on the August 2001 statements.

Ameen nevertheless relies on a conversation she had during an appointment with her personal physician early in 2002, when he told her that Merck representatives had made disparaging statements about her. Ameen asserts that her defamation claim survives, because she filed suit within one year following her discovery of these statements. The 2002 conversation with her doctor, however, does not save Ameen's defamation claim. First, the statement by the doctor is inadmissible as hearsay.[29] Second, even if it were admissible, the doctor did not identify the speaker or the specific nature of what was said, so his comments are too vague to support Ameen's defamation claim.[30]

Ameen further relies on a self-publication theory of defamation based on the disclosures she made to potential employers about statements made by Merck employees. Assuming arguendo that Texas law recognizes such a theory, the statements made by Ameen to potential employers cannot be considered defamatory. Ameen reported to each of these potential employers that, although Merck ascribed her termination to her violation of company policy, she

---

[29] See Patton v. United Parcel Serv., Inc., 910 F. Supp. 1250, 1274 (S.D. Tex. 1995) (citing Wells v. Shop Rite Foods, Inc., 474 F.2d 838, 839 (5th Cir. 1973)).

[30] See Abbott, 946 S.W.2d at 520 (granting summary judgment when plaintiff failed to specify facts of alleged defamation).

13

believed that the true reason for her termination was retaliation for her reporting employment discrimination.  To make out a defamation claim based on self-publication, however, a plaintiff must believe the statement was in fact true at the time she disclosed it.[31]  As the gist of her revelations to her potential new employers was that she believed the allegedly defamatory statements were false, Ameen cannot make out a defamation claim against the individual defendants based on a theory of self-publication.

### (ii) Civil Conspiracy

Civil conspiracy occurs when (1) two or more persons (2) with an objective to be accomplished (3) have a meeting of the minds on the objective of the conspiracy or course of action and (4) commit one or more unlawful, overt acts (5) that proximately results in damages.[32]  To state a claim of civil conspiracy against an employee or agent of a principal, the employee or agent must have been acting outside the scope of his employment or agency.[33]

Appellees have met their burden of demonstrating that Ameen cannot make out her claim of civil conspiracy.  First, her theory that the individual defendants conspired to mislead Merck about the

---

[31]    Martineau v. ARCO Chem. Co., 203 F.3d 904, 914 (5th Cir. 2000) (discussing Texas law).

[32]    Massey v. Armco Steel Co., 652 S.W.2d 932, 934 (Tex. 1983).

[33]    Vosko v. Chase Manhattan Bank, N.A., 909 S.W.2d 95, 100 n.7 (Tex. App.—Houston [14th District] 1995, pet. denied) ("Nor can a parent and subsidiary corporation, or their employees or agents acting within the scope of their employment, conspire.").

facts relevant to her termination is belied by her admissions that she violated Merck policy.  Second, to the extent that this claim rests on the apparently rampant violations of HEL policy by Merck employees,[34] this did not proximately cause Ameen's damages.  Third, Ameen has not alleged any facts suggesting that the individual defendants acted outside the scope of their employment in reporting the facts of Ameen's misconduct to Merck.

### (iii)     Tortious Interference with Ameen's At-Will Employment Contract

To state a tortious interference claim, a plaintiff must prove (1) the existence of a business relationship subject to interference, (2) the occurrence of a willful and intentional act of interference, (3) that was the proximate cause of the plaintiff's injury, and (4) actual damages or loss occurred.[35]  A business's agent can be held liable for interference with an employment contract when he acts willfully and intentionally to serve his own personal interest at the company's expense.[36] Nevertheless,

> [b]ecause a corporate officer's acts on the corporation's behalf usually are deemed corporate acts, a plaintiff

---

[34]     Despite the existence of the HEL policy, several sales representatives testified that Merck policies were routinely broken, as Merck representatives competed with other pharmaceutical companies to attract physicians as customers.

[35]     Hill v. Heritage Res., Inc., 964 S.W.2d 89, 109 (Tex. App.—El Paso 1997, pet. denied).

[36]     Powell Indus., Inc. v. Allen, 985 S.W.2d 455, 457 (Tex. 1998).

must show that the agent acted <u>solely</u> in his own interests. . . . A corporate officer's mixed motives-to benefit both himself and the corporation-are insufficient to establish liability. . . . [I]f a corporation does not complain about its agent's actions, then the agent cannot be held to have acted contrary to the corporation's interests.[37]

Merck does not object to the conduct of the individual defendants. As the individual defendants' actions cannot therefore be considered contrary to Merck's interest, Ameen's tortious interference claim likewise fails.

### (iv) Intentional Infliction of Emotional Distress

"To recover for intentional infliction of emotional distress, a plaintiff must prove that (1) the defendant acted intentionally or recklessly; (2) the defendant's conduct was extreme and outrageous; (3) the defendant's actions caused the plaintiff emotional distress; and (4) the emotional distress suffered by the plaintiff was severe."[38] The courts of Texas have adopted the Restatement (Second) of Torts' definition of extreme and outrageous conduct as "conduct that is 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'"[39] The alleged "extreme and outrageous"

---

[37]    <u>Id.</u> (emphasis added and citations omitted).

[38]    <u>Randall's Food Mkts., Inc. v. Johnson</u>, 891 S.W.2d 640, 644 (Tex. 1995).

[39]    <u>Id.</u> (quoting <u>Twyman v. Twyman</u>, 855 S.W.2d 619, 621 (Tex. 1993)).

16

conduct proffered by Ameen is her treatment by the individual defendants during the investigation process and their role in "persuad[ing] Merck to fire Plaintiff under false pretenses."

To the extent that this claim is based on Ameen's allegedly retaliatory termination, it fails. The Texas Supreme Court has instructed that intentional infliction of emotional distress is a "judicially created [cause of action] for the limited purpose of allowing recovery in those rare instances in which a defendant intentionally inflicts severe emotional distress in a manner so unusual that the victim has no other recognized theory of redress."[40] The conduct Ameen relies on — the allegedly pretextual explanations for her termination in retaliation for her complaints of discrimination — is the same as the conduct underlying her retaliation claim. As Ameen had the ability to bring a retaliation claim for this conduct, her intentional infliction of emotional distress claim based on the same action cannot stand.[41]

Ameen also impugns the treatment she received during the interview by Petrovich as inflicting distress. She claims that Petrovich and Young persisted in questioning her in a hotel room about her violations of company policy until she broke into

---

[40] Hoffmann-LaRoche Inc. v. Zeltwanger, 144 S.W.3d 438, 447 (Tex. 2004).

[41] Id. at 448 ("If the gravamen of a plaintiff's complaint is the type of wrong that the statutory remedy was meant to cover, a plaintiff cannot maintain an intentional infliction claim regardless of whether he or she succeeds on, or even makes, a statutory claim.").

17

"hysterical tears."  She says that they then put her in another room and told her not to leave, forbidding her from using the phone or talking to anyone; that she remained in the room for approximately thirty to forty minutes; and that although the door to the room remained open at all times, a guard was stationed there.

To the extent that Ameen's claim relies on the individual defendants' investigation of the complaint, including their instruction that she not leave the room or use the telephone, Appellees have demonstrated that there is no reasonable basis to predict Ameen's claim might succeed, as such conduct falls far short of that considered "extreme or outrageous" under Texas Law. Randall's Food Markets, Inc. v. Johnson is instructive.  There, the plaintiff brought a claim of intentional infliction of emotional distress against her former employer and supervisors based on their conduct during an investigation of her theft of an item from the store where she worked.  She alleged that her supervisors' tone and manner of inquiry was "severe and curt," which resulted in her crying, and that she believed that she was unable to leave because her supervisor instructed her to stay put.[42]  The Texas Supreme Court found that she had failed to demonstrate intentional infliction of emotional distress.  In so holding, the court noted, "[e]mployers act within their legal rights in investigating

_____

[42]    Randall's Food Mkts., Inc., 891 S.W.2d at 644.

18

reasonably credible allegations of dishonesty of their employees."[43] The <u>Randall's</u> court found that the supervisors' conduct was "not 'beyond all possible bounds of decency,' 'atrocious,' and 'utterly intolerable in a civilized community'; rather, it [was] a managerial function that is necessary to the ordinary operation of a business organization."[44]

Although there are discrete factual differences between the treatment received by the plaintiff in <u>Randall's Food Markets</u> and that received by Ameen,[45] the cases are remarkably similar. As in <u>Randall's Food Markets</u>, the supervisors' conduct here is not "beyond all possible bounds of decency."

### (v) Negligence

To establish actionable negligence, a plaintiff must show that: (1) the defendant owed him a duty; (2) that duty was breached; and (3) he suffered damages as a proximate result of the breach.[46] Individual employees and managers may be held personally liable for on-the-job negligence only if the alleged duty is one that is owed to the employee distinct from that owed by the

---

[43] <u>Id.</u>

[44] <u>Id.</u> (citing <u>Wornick Co. v. Casas</u>, 856 S.W.2d 732, 735 (Tex. 1993)).

[45] In <u>Randall's Food Markets</u>, no guard stood outside of the room, but the plaintiff remained in the room for several hours. <u>Id.</u> at 644-45.

[46] <u>Van Horn v. Chambers</u>, 970 S.W.2d 542, 544 (Tex. 1998).

19

employer.[47]   Ameen conceded that the only duty the individual defendants owed to her arose from their employment at Merck.  She cites no duty separate and apart from the duty they owed as employees of Merck.  Her negligence claim against the individual defendants therefore fails.

### (vi) Negligent Misrepresentation and Promissory Estoppel

The elements of a negligent misrepresentation claim are:

> (1) the representation is made by a defendant in the course of his business, or in a transaction in which he has a pecuniary interest; (2) the defendant supplies "false information" for the guidance of others in their business; (3) the defendant did not exercise reasonable care or competence in obtaining or communicating the information; and (4) the plaintiff suffers pecuniary loss by justifiably relying on the representation.[48]

The elements of promissory estoppel are (1) a promise, (2) foreseeability by promissor of reliance on that promise, and (3) substantial detrimental reliance by the promisee.[49]

The alleged promise/false information pointed to by Ameen is that Winn allegedly promised her that if she refrained from disclosing that she had violated Merck policy, Winn would protect her job.  Negligent misrepresentation claims, however, cannot rest

---

[47]    Leitch v. Hornsby, 935 S.W.2d 114, 117 (Tex. 1996).

[48]    Federal Land Bank Ass'n v. Sloane, 825 S.W.2d 439, 442 (Tex. 1991).

[49]    Pegram v. Honeywell, Inc., 361 F.3d 272, 288 (5th Cir. 2004) (applying Texas law).

20

on future events.[50]  Similarly, with respect to promissory estoppel claims, vague oral assurances of future job security, such as that alleged here, are insufficient to modify an employee's at-will employment status.[51]  Further, Ameen's reliance on such a statement ⸺ one that directly contradicted Merck's written policies ⸺ that she would not be terminated if she did not disclose the violations of the HEL policy is simply not reasonable.[52]

### (vii) False Imprisonment

"The essential elements of false imprisonment are: (1) willful detention; (2) without consent; and (3) without authority of law. A detention may be accomplished by violence, by threats, or by any other means that restrains a person from moving from one place to another."[53]  When a plaintiff alleges that the detention was accomplished by a threat, "the plaintiff must demonstrate that the threat was such as would inspire in the threatened person a just

---

[50]  *Allied Vista, Inc. V. Holt*, 987 S.W.2d 138, 141 (Tex. App.⸺Houston [14th Dist.] 1999, pet. denied).

[51]  *See Gilmartin v. KVTV-Channel 13*, 985 S.W.2d 553, 559 (Tex. App.⸺San Antonio 1998, no writ).  Ameen concedes that she was an at-will employee.

[52]  *Cf.* *DRC Parts & Accessories, L.L.C v. VM Motori, S.P.A.*, 112 S.W.3d 854, 858 (Tex. App.⸺Houston [14th Dist.] 2003, pet. denied) (relying on oral promise that directly contradicts written contract cannot be justifiable).

[53]  *Randall's Food Mkts., Inc.*, 891 S.W.2d at 644-45 (internal citations omitted).

21

fear of injury to her person, reputation, or property."[54]

Ameen's false imprisonment claim stems from the manner in which she was interviewed about the violations of HEL policy. Petrovich and Griffin allegedly questioned her about violations of company policy for about 45 minutes, in a hotel room, during which she cried "pretty hysterically." After the initial interview, Ameen was moved to another hotel room, where she was instructed that she should not leave, use her cell phone, or talk to anyone. She was under the watch of a security guard, whom she believed would prevent her from leaving even though the door to the hotel room was open. She remained in this room for approximately 30-45 minutes before she was formally discharged.

Despite these facts, Ameen acknowledged that she did not feel threatened, and that no one told her she would be restrained to prevent her leaving. And, she was compensated for the time she spent in the hotel room. Although there was a security guard standing outside of the room, the door remained open the entire time that Ameen was in the room. She was not locked in the room, and at no time did she attempt to exit. Indeed, Ameen admitted that the thought of leaving "didn't even cross [her] mind." She wanted to leave, but she had been asked to stay and she knew that her future at the company was being determined.

In <u>Safeway Stores, Inc. v. Amburn</u>, an intermediate Texas

---

[54]    <u>Id.</u> at 645.

22

appellate court was presented with similar facts. In dismissing the case, the court noted that

> [w]hile employers should be admonished that their dealing with employees should always be reasonable and humane, we cannot adopt a rule which would constantly place an employee in jeopardy of a charge of false imprisonment. The interview with Amburn had a direct bearing upon his duties as an employee. He was compensated during the time that he was in the area. Under the circumstances, it cannot be said that his requested presence for purposes of interrogation constituted false imprisonment unless he was unlawfully detained. We accept at face value Amburn's testimony that he was scared. It is not unlikely that any person being confronted with questions concerning his personal integrity would relish such an interview. This, however, is not the same as false imprisonment.[55]

In the framework established by the Texas courts' rejections of similar claims in Amburn and Randalls Food Markets,[56] Ameen's false imprisonment claim cannot succeed against the individual defendants.

-----

Defendants-Appellees met their burden of demonstrating that Ameen has no basis for recovery against the individual defendants under any of the state law causes of action that she advanced. Thus, the district court did not err in denying her motion to remand.

## B. Summary Judgment

### 1. Standard of Review

---

[55] Safeway Stores, Inc. v. Amburn, 388 S.W.2d 443, 446 (Tex. Civ. App. 1965)

[56] 891 S.W.2d 640.

23

We review the district court's decision to grant summary judgment de novo.[57] A motion for summary judgment should be granted only when there is no genuine issue of material fact.[58] In determining whether there is a genuine issue of material fact, the reviewing court views all facts and draw all inferences therefrom in favor of the non-moving party.[59]

## 2. Retaliation

To establish retaliation under the Texas Commission on Human Rights Act ("TCHRA"), the employee must demonstrate that (1) he engaged in protected activity, (2) the employer took an adverse employment action, and (3) there is a causal link between the protected activity and the adverse employment action.[60] If the employee meets his prima facie burden, "the burden then shifts to the [employer] to demonstrate a legitimate nondiscriminatory purpose for the employment action."[61] If the employer does so, the burden shifts back to the employee to demonstrate that the stated

---

[57] American Int'l Specialty Lines Ins. Co. v. Canal Indem. Co., 352 F.3d 254, 260 (5th Cir. 2003).

[58] Weeks Marine, Inc. v. Fireman's Fund Ins. Co., 340 F.3d 233, 235 (5th Cir. 2003).

[59] Id.

[60] Gee v. Principi, 289 F.3d 342, 345 (5th Cir. 2002) (Title VII action). As the TCHRA was designed to align Texas state law with federal law, courts look to federal law interpreting Title VII when analyzing TCHRA claims. Quantum Chem. Corp. v. Toennies, 47 S.W.3d 473, 476 (Tex. 2001).

[61] Pineda v. United Parcel Serv., Inc., 360 F.3d 483, 487 (5th Cir. 2004) (quoting Gee, 289 F.3d at 345).

24

reason is a pretext for retaliation.[62]  To demonstrate pretext, the employee must show that the adverse employment action would not have occurred "but for" his protected conduct.[63]

### a.    Prima Facie Case

Ameen has satisfied the first two elements of her prima facie case: She engaged in protected activity, and she was terminated. She fails to satisfy the third element, however, as she presented no probative evidence of a causal connection between her termination and her protected activity.  Assuming arguendo that the decision-maker, Petrovich, was even aware that some activity Ameen engaged in was "protected,"[64] we nevertheless conclude that she has failed to demonstrate that such activity was the reason for her termination.  The timing of Ameen's termination, eleven months after she allegedly complained to Petrovich, casts significant doubt on the claim that her termination was in retaliation for that

---

[62]    Id.

[63]    Id. at 488-89 (holding that "but for" standard applied to retaliation case brought under Texas law).

[64]    Although Ameen contends in her brief that she testified at her deposition that she reported Winn's discriminatory conduct to Petrovich, the portions of her deposition cited to in her brief contain no such testimony.  Rather, it appears that Ameen's complaint of discrimination to Petrovich was limited to a complaint about the "Spares" program, a Merck program that required its employees to travel.  It is far from clear that her complaint about this program rises to the level of protected activity.

25

complaint.[65] Additionally, Ameen received favorable treatment from both Petrovich and Winn in the months following her putative protected activity: She received positive reviews and discretionary bonuses in the year following her lodging of those complaints, and she was even granted a two-month sabbatical so that she could spend the summer with her children. This sort of treatment is "utterly inconsistent with an inference of retaliation."[66]

Ameen also tries to rely on the so-called "cat's paw" theory to establish a causal link, asserting that Winn unduly influenced Petrovich's decision. "[T]he discriminatory animus of a manager can be imputed to the ultimate decisionmaker if the decisionmaker 'acted as a rubber stamp, or the "cat's paw," for the subordinate employee's prejudice.'"[67] "To invoke the cat's paw analysis, [the employee] must submit evidence sufficient to establish two conditions: (1) that a co-worker exhibited [retaliatory] animus, and (2) that the same co-worker 'possessed leverage, or exerted

---

[65]    See Grizzle v. Travelers Health Network, Inc., 14 F.3d 261, 268 (5th Cir. 1994) (10-month lapse in time suggested that retaliatory motive was unlikely).

[66]    Brady v. Houston Indep. Sch. Dist., 113 F.3d 1419, 1424 (5th Cir. 1997).

[67]    Laxton v. Gap Inc., 333 F.3d 572, 584 (5th Cir. 2003) (quoting Russell v. McKinney Hosp. Venture, 235 F.3d 219, 227 (5th Cir. 2000)).

influence, over the titular decisionmaker.'"[68]

Even assuming arguendo that Winn influenced Petrovich's decision to terminate Ameen, her claim still fails, as "the causal link between the protected conduct and termination is broken where the [decision-maker] . . . conducts an 'independent investigation' in the course of reaching his or her decision."[69] After Winn's initial investigation, Petrovich asked Human Resources personnel to investigate the matter further. In addition, he conducted his own investigation. As part of this independent investigation, Petrovich interviewed Ameen, and she acknowledged that she had violated Merck policy on multiple occasions. In Wallace v. Methodist Hospital System,[70] we rejected a Cat's Paw theory of causation under similar circumstances. Discussing Wallace, we have previously explained that "[t]he final decisionmakers in Wallace . . . did not rely on the Wallace [discriminatory supervisor's] factfinding to terminate the plaintiff because the plaintiff in that case freely admitted to the final decisionmakers that she committed the violation for which they fired her."[71] Similarly, even if we were to assume that Winn recommended Ameen's termination, Petrovich cannot be said to have acted on that

---

[68]    Roberson v. Alltel Info. Servs., 373 F.3d 647, 653 (5th Cir. 2004) (quoting Russell, 235 F.3d at 227).

[69]    Mato v. Baldauf, 267 F.3d 444, 450 (5th Cir. 2001).

[70]    271 F.3d 212, 218 (5th Cir. 2001)

[71]    Laxton, 333 F.3d at 584.

recommendation, given Ameen's direct admission of her misconduct to Petrovich.

###     b.    Pretext

Ameen's retaliation claim is further doomed by her inability to demonstrate that Merck's non-discriminatory reason for her firing is pretextual. Merck asserted that the legitimate nondiscriminatory reason for Ameen's termination was her admission that she repeatedly violated Merck's HEL policies. We have consistently held that in retaliation cases where the defendant has proffered a nondiscriminatory purpose for the adverse employment action the plaintiff has the burden of proving that "but for" the discriminatory purpose he would not have been terminated."[72] Ameen was therefore required to demonstrate that "but for" the alleged retaliatory purpose, she would not have been terminated. This she has failed to do. Ameen admitted violating Merck's policy by misdirecting to doctors thousands of dollars she obtained by filing fraudulent reports. Ameen was aware of Merck's stated policy that the failure of any employee to adhere strictly to both the letter and spirit of these general principles would result in appropriate action, up to and including dismissal from employment. Based on her conceded conduct, Ameen cannot satisfy her burden of demonstrating that Merck's legitimate nondiscriminatory reason is pretextual.

---

[72]     Pineda, 360 F.3d at 487 (analyzing retaliation claim brought under the TCHRA).

28

### III. CONCLUSION

The orders of the district court denying Ameen's motion to remand and dismissing her action are

AFFIRMED.