# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 17-30523

United States Court of Appeals
Fifth Circuit

**FILED**

January 11, 2018

Lyle W. Cayce
Clerk

CURTIS D. MORGAN,

Plaintiff–Appellee,

versus

HUNTINGTON INGALLS, INCORPORATED,
   Formerly Known as Northrup Grumman Ship Systems, Incorporated;
J. MELTON GARRETT; ALBERT BOSSIER; LAMORAK INSURANCE CO.;
MURPHY OIL USA, INCORPORATED,

Defendants–Appellants.

Appeals from the United States District Court
for the Middle District of Louisiana

Before SMITH, PRADO, and HIGGINSON, Circuit Judges.

JERRY E. SMITH, Circuit Judge:

Defendants Huntington Ingalls, Incorporated ("Huntington Ingalls"), J. Melton Garrett, Albert Bossier, Lamorak Insurance Company, and Murphy Oil USA, Incorporated ("Murphy Oil"), appeal an order of remand in which the district court found removal untimely under 28 U.S.C. § 1446(b)(3).

No. 17-30523

Defendants contend that removal was timely instituted within thirty days of receipt of a deposition transcript indicating the case might be removable under 28 U.S.C. § 1442(a)(1). Plaintiff Curtis Morgan challenges Murphy Oil's standing to appeal. Because the removal clock began on receipt of the deposition transcript, we vacate the order and remand to the district court for consideration of whether Huntington Ingalls meets the substantive requirements for federal officer jurisdiction. We dismiss Murphy Oil's appeal for want of standing.

I.

Morgan, a "sheet metal tacker" for Avondale Shipyards[1] in 1966, alleges that his employment exposed him to asbestos and resulted in his contracting asbestos-related mesothelioma among other health problems. On February 23, 2017, Morgan sued seventy-eight defendants, including Huntington Ingalls, former alleged executive officers and insurers of Avondale Shipyards,[2] and Murphy Oil in state court under theories of negligence and strict liability. His pleading did not identify any vessels on which he worked.

Morgan was deposed during eight days from March 9 to April 13, 2017. Avondale specifically questioned him on two days (March 10 and 20). Morgan stated that he worked at Avondale's main yard and on one vessel, a Lykes vessel. He did not remember working on any other vessel. On March 20, Avondale's lawyer questioned Morgan about working on the *USS Huntsville*,[3] but

---

[1] Avondale's formal identity is Huntington Ingalls Incorporated—formally known as Northrup Grumman Shipbuilding Inc., Northrup Grumman Ship Systems, Inc., Avondale Industries, Inc., Avondale Shipyards, Inc., and Avondale Marine Ways, Inc.

[2] Consistent with the briefs, we hereinafter refer to these parties and Avondale Shipyards collectively as "Avondale."

[3] The *USS Huntsville* was converted in the mid-1960s to support NASA's Apollo manned missions to the moon. The Navy hired Ling-Temco-Vaught Inc. for the "design, preparation of working plans and other data, modification, renovation, and repair" of the

No. 17-30523

Morgan could not remember the ship. Avondale showed Morgan medical records indicating he had allegedly worked and been injured on the *USS Huntsville* during his employment. Morgan reiterated that he could not remember the ship. "But if the records indicate that [he] had those injuries aboard the HUNTSVILLE, [he] would agree that [he] worked on the HUNTSVILLE[.]"

On March 28, 2017, Avondale received a link to the deposition transcript. It removed the case on April 27, 2017, which was 30 days after receipt of the transcript but 38 days after the relevant testimony. The basis for the removal was the federal officer removal statute, 28 U.S.C. § 1442, which allows removal of state cases commenced against

> [t]he United States or any agency thereof or any officer . . . of the United States or of any agency thereof, in an official or individual capacity, for or relating to any act under color of such office or on account of any right, title or authority claimed under any Act of Congress for the apprehension or punishment of criminals or the collection of the revenue.

§ 1442(a)(1).

Morgan contested removal as untimely under § 1446(b)(3) and claimed that the court "lack[ed] federal subject matter jurisdiction under [the federal officer removal statute]." The district court agreed removal was untimely. It determined that section 1446's removal clock began running on the date of the relevant oral testimony. Because removal was untimely, the court remanded and did "not decide whether the[ ] substantive requirements of § 1442 ha[d] been met."

Avondale and Murphy Oil appeal. Morgan moved to dismiss Murphy Oil's appeal, contending that it lacks standing to appeal. We expedited the

---

ship. Avondale was in turn hired as a subcontractor for the "design, . . . modification, renovation, and repair . . . , outfitting and delivery of" the ship.

No. 17-30523

appeal because of Morgan's ill health, but he died September 14, 2017.

## II.

It makes little practical difference whether Murphy Oil has standing to appeal. Avondale's standing to appeal is not questioned, so we will still reach the issue of whether the deposition testimony or transcript starts the removal clock. If the case is removable by Avondale, the entire case will be deemed removable, such that Morgan's claims against all other defendants, including Murphy Oil, will be heard in federal court as well.[4]

But, "Article III standing implicates the federal judiciary's power to adjudicate disputes [so] it can be neither waived nor assumed." *Rohm & Hass Texas, Inc. v. Ortiz Bros. Insulation, Inc.*, 32 F.3d 205, 207 (5th Cir. 1994) (footnote omitted). "Merely because a party appears in the district court proceedings does not mean that the party automatically has standing to appeal the judgment rendered by that court."[5] A defendant must meet both constitutional and prudential standing requirements.[6]

"[T]he irreducible constitutional minimum of standing contains three elements[:]" (1) "[T]he plaintiff must have suffered an 'injury in fact'—an invasion of a legally protected interest which is (a) concrete and particularized and

---

[4] *See Savoie v. Huntington Ingalls, Inc.*, 817 F.3d 457, 463 (5th Cir. 2016) ("[R]emoval of the entire case is appropriate so long as a single claim satisfies the federal officer removal statute.") (citing 14C WRIGHT & MILLER, FED. PRAC. & PROC. Juris. § 3726 (4th ed.) ("Section 1442(a)(1) authorizes removal of the entire case even if only one of the controversies it raises involves a federal officer or agency.")).

[5] *Rohm & Hass*, 32 F.3d at 208. ("[A] party generally may not appeal a district court's order to champion the rights of another, and even '[a]n indirect financial stake in another party's claims is insufficient to create standing on appeal.'") (quoting *Morrison-Knudsen Co. v. CHG Int'l, Inc.*, 811 F.2d 1209, 1214 (9th Cir. 1987)) (alterations in original).

[6] *Bennett v. Spear*, 520 U.S. 154, 162 (1997) ("The question of standing 'involves both constitutional limitations on federal-court jurisdiction and prudential limitations on its exercise.'") (quoting *Warth v. Seldin*, 422 U.S. 490, 498 (1975)).

No. 17-30523

(b) 'actual or imminent, not "conjectural" or "hypothetical"'"; (2) "there must be a causal connection between the injury and the conduct complained of"; and (3) "it must be 'likely,' . . . that the injury will be 'redressed by a favorable decision.'" *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992) (citations omitted). Murphy Oil has the burden to establish standing. *In re Deepwater Horizon*, 857 F.3d 246, 253 (5th Cir. 2017).

Murphy Oil points to no sufficient "injury in fact." The primary injury it alleges is "a procedural right to remove cases within thirty days of receipt of a deposition transcript." Because it "has, in fact, litigated [this] issue . . . in other personal injury litigation" and "consistently faces situations where a case is potentially removable upon close review of the deposition transcript," Murphy Oil believes that "[t]he district court's ruling . . . impinges on Murphy's procedural removal rights." That is a speculative grievance well short of a concrete injury. *See Defs. of Wildlife*, 504 U.S. at 560. The hypothetical potential to confront this issue in future possible litigation with different plaintiffs is too conjectural to constitute an injury in fact.[7]

Further, Murphy Oil "cannot satisfy the demands of Article III by alleging a bare procedural violation." *Spokeo Inc. v. Robins*, 136 S. Ct. 1540, 1550 (2016). It must also show "some concrete interest that is affected by the deprivation." *Summers v. Earth Island Inst.*, 555 U.S. 488, 496 (2009); *accord Spokeo*, 136 S. Ct. at 1549. Murphy Oil asserts that it "maintains an interest in a federal forum for this and other, future removable litigation," such that "the District Court's remand has now deprived Murphy of its preferred forum." But, Murphy Oil itself has no right to be in federal court in the first place. Only Avondale, its co-defendant, can invoke the federal officer removal statute. Had

---

[7] *See Rohm & Hass*, 32 F.3d at 211 (finding "greater potential liability should [defendant] ever file for bankruptcy" too "attenuated" to satisfy Article III).

No. 17-30523

Avondale not chosen to remove, Murphy Oil could not have asserted federal officer jurisdiction on Avondale's behalf. Congress granted the right to remove under § 1442 to only certain classes of defendants, none of which includes Murphy Oil.[8] A generalized desire to litigate in federal court, without holding a corresponding right to be in federal court in the first place, is insufficient to satisfy the injury-in-fact prong of Article III. Murphy Oil experienced no concrete and particularized injury sufficient to satisfy the injury-in-fact prong of Article III, so its appeal is dismissed for lack of jurisdiction.

## III.

## A.

A remand order "is not reviewable on appeal or otherwise, except that an order remanding a case to the State court from which it was removed pursuant to *section 1442* or 1443 of this title shall be reviewable by appeal or otherwise." 28 U.S.C. § 1447(d) (emphasis added). Avondale removed under § 1442(a)(1), so we have appellate jurisdiction.[9]

We review a remand order de novo. *Preston v. Tenet Healthsystem Mem'l Med. Ctr., Inc.*, 485 F.3d 793, 796 (5th Cir. 2007). In cases involving § 1442, the remand order is reviewed "without a thumb on the remand side of the scale."[10]

---

[8] *See* 28 U.S.C. § 1442(a) ("A civil action or criminal prosecution that is commenced in a State court and that is against or directed to any of the following *may be removed by them* . . . .") (emphasis added).

[9] *See Decatur Hosp. Auth. v. Aetna Health Inc.*, 854 F.3d 292, 295–96 (5th Cir. 2017) (noting that although "we ordinarily lack jurisdiction to review a remand order based on [ ] a defect [in removal procedure] . . . the fact that [defendant] relied upon the federal officer removal statute in its notice of removal permits appellate review.").

[10] *Decatur*, 854 F.3d at 295 (quoting *Savoie*, 817 F.3d at 462); *see also Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1253 (9th Cir. 2006) ("[W]here the timeliness of a federal officer's removal is at issue, we extend section 1442's liberal interpretation to section 1446.").

## No. 17-30523

Section 1446(b)(1) permits removal "30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief." "[I]f the case stated by the initial pleading is not removable," a defendant can also remove "within 30 days after receipt . . . of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable." § 1446(b)(3). Avondale removed under the latter provision, claiming that the transcript of Morgan's deposition is "other paper" from which it was able to ascertain that the case was removable under the federal officer statute.

### B.

Though this court has not yet confronted the precise question whether oral testimony at a deposition is "other paper" within the meaning of § 1446(b)(3), we have held that "a transcript of the deposition testimony is 'other paper.'" *S.W.S. Erectors, Inc. v. Infax, Inc.*, 72 F.3d 489, 494 (5th Cir. 1996). Thus, in this case, we review only whether oral deposition testimony can constitute other paper, and if so, whether the testimony or the transcript started the removal clock in this instance.[11]

### C.

The plain meaning of, purpose of, and policy considerations behind § 1446(b) all support the conclusion that oral testimony at a deposition does not constitute "other paper." "[I]n any case requiring statutory construction,

---

[11] Morgan cites our unpublished decision in *Ameen v. Merck & Co.*, 226 F. App'x 363 (5th Cir. 2007), for support that oral testimony can be "other paper." There, we cited *S.W.S. Erectors*, for the proposition that a deposition was an "other paper." We found "removal [ ] timely, as Appellees removed within 30 days of becoming aware that the case might be removable." *Id.* at 368. That case does not necessarily suggest that the removal clock was triggered by the testimony, but only that removal was timely. To the extent *Ameen* can be read to suggest that oral testimony triggers the removal clock, it is a nonbinding opinion and a misreading of *S.W.S. Erectors*.

7

No. 17-30523

the High Court has instructed us to adhere to the plain language of the law
. . . ."[12] Though "removal statutes are to be construed strictly against removal
and for remand[,] [t]his canon does not trump a plain language reading of the
statute's terms."[13]

> Except as provided in subsection (c), if the case stated by the initial
> pleading is not removable, a notice of removal may be filed within 30
> days after *receipt* by the defendant, through service or otherwise, of a
> *copy* of an amended pleading, motion, order or *other paper* from which
> it may first be *ascertained* that the case is one which is or has become
> removable.

§ 1446(b)(3) (emphasis added).[14]

"[P]aper" is defined as "[a] written or printed document or instrument."
BLACK'S LAW DICTIONARY 1266 (4th ed. 1951).[15]  "[R]eceipt" is defined as the
"[a]ct of receiving; also, the fact of receiving or being received; that which is
received."  *Id.* at 1433.[16]  "Copy" is defined as "[t]he transcript or double of an
original writing."  *Id.* at 405.  "'Ascertain' means 'to make certain, exact, or
precise' or 'to find out or learn with certainty.'"[17]  Thus, "ascertain" requires "a

---

[12] *Chapman v. Powermatic, Inc.*, 969 F.2d 160, 164 (5th Cir. 1992) (alteration in original) (quoting *FDIC v. Meyerland Co.* (*In re Meyerland Co.*), 960 F.2d 512, 516 (5th Cir. 1992) (en banc)) (looking to the plain language of § 1446(b)).

[13] *Bosky v. Kroger Tex., LP*, 288 F.3d 208, 211 (5th Cir. 2002) (footnotes omitted) (internal quotation marks omitted) (looking to the plain language of § 1446(b)).

[14] Section 1446 was updated in December 2011 when Congress enacted the Federal Courts Jurisdiction and Venue Clarification Act.  Pub. L. No. 112-63, 125 Stat. 758 (2011). There were, however, no substantive changes to the relevant portion of § 1446, only structural changes.  H.R. Rep. No. 112-10, at 14 (2011) ("New paragraph 1446(b)(3) is essentially the same as the text of the second paragraph of current subsection 1446(b), except that the 1-year limit on removal in diversity cases is made part of a new subsection . . . .").

[15] The relevant statutory language was first put into effect in 1949.  The 1951 edition of BLACK'S LAW DICTIONARY is the edition closest to the original statutory enactment.

[16] "Receive" is similarly defined as "[t]o take into possession and control; accept custody of."  BLACK'S LAW DICTIONARY 1433 (4th ed. 1951).

[17] *Bosky*, 288 F.3d at 211 (quoting WEBSTER'S NINTH NEW COLLEGIATE DICTIONARY 107 (1990)).

No. 17-30523

greater level of certainty or that the facts supporting removability be stated unequivocally." *Id.* "[T]he information supporting removal in a copy of an amended pleading, motion, order or other paper" under § 1446(b)(3)[18] "must be 'unequivocally clear and certain' to start the time limit running." *Id.*

The plain meaning of each of these words suggests that the information giving notice of removal must be contained in a writing. The defendant must actually "receive" a "copy" of the pertinent information. To say that a defendant receives a copy of the information upon oral testimony defies logic. The definition of "paper" contemplates a written "document" or "instrument."[19] The definition of "copy" specifically states that the "double" must be in "writing." Oral testimony is not a written document or instrument. Further, as *Bosky* explains, "ascertain" requires a high level of certainty. Although it is possible that an oral deposition can provide such certainty, transcripts are often the key that a court must use to evaluate disputes over whether the testimony forms the basis for removal.

Moreover, under the *ejusdem generis* canon of statutory construction, "other papers" should be read similarly to "amended pleading, motion, order."[20] All three of those items are generally reduced to a writing—though not always.[21] All, however, are modified by "a copy of," which emphasizes the

---

[18] At the time of *Bosky*, § 1444(b) did not have subsections but was instead long paragraphs. The 2011 amendment divided § 1444(b) into subsections but did not make a substantive change.

[19] An instrument is "[a] written document; a formal or legal document in writing, such as a contract, deed, will, bond or lease. . . . A document or writing which gives formal expression to a legal act or agreement for the purpose of creating, securing, modifying, or terminating a right." BLACK'S LAW DICTIONARY 941 (4th ed. 1951).

[20] *See Chapman*, 969 F.2d at 164 ("[T]he recitation . . . of the words 'amended pleading, motion, order,' before the words 'or other paper[]' [ ] clearly refer[s] to actions normally and logically occurring after the filing of the initial pleading.").

[21] A pleading is a "formal written statement[] of accusation or defense presented by

written nature of these three documents.[22]

We comply with the plain language "unless 'literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters.'"[23] The removal statute generally favors "reduc[ing] removals."[24] But, "the purpose of the removal statute" is also "to encourage prompt resort to federal court when a defendant first learns" of the facts supporting removability. *Addo v. Globe Life & Acc. Ins. Co.*, 230 F.3d 759, 762 (5th Cir. 2000). "[D]efendant[s] will be less likely to act on more equivocal information provided in an 'amended pleading, motion, order or other paper' because such a 'protective' removal is no longer necessary to avoid the risk of losing [their] right to removal by the lapse of time." *Bosky*, 288 F.3d at 212. The two competing goals of the removal statute are both to encourage prompt, proper removals and to prevent hasty, improper removals.

It "promotes [both the purpose of § 1446 and] judicial economy" to "reduce 'protective' removals by defendants" and "discourage removals before

---

the parties alternately in an action at law." BLACK'S LAW DICTIONARY 1311 (4th ed. 1951). A motion is "[p]rimarily an application for a rule or order made viva voce to a court or judge, but the term is generally employed with reference to all such applications, whether written or oral." *Id.* at 1164. An order is "[a] mandate, precept; a command or direction authoritatively given; a rule or regulation. . . . Every direction of a court or judge made or entered in writing, and not included in a judgment." *Id.* at 1247.

[22] *Accord Jernigan v. Ashland Oil Inc.*, 989 F.2d 812, 815 (5th Cir. 1993) (explaining that under § 1446(b) "[t]he thirty days is measured from receipt of whatever *writing . . .* constitutes first notice."). *See also* 14C WRIGHT & MILLER, FED. PRAC. & PROC. Juris. § 3731 (4th ed.) ("Although the requisite notice of removability may be communicated to defendants in either a formal or an informal manner, the communication should be in writing."); Adam C. Clanton, *Uncertainty in Federal Removal Procedure: The Riddle of the "Other Paper,"* 71 DEF. COUNS. J. 388, 398 (2004) (explaining that the "plain meaning" of "other paper" cannot include an "oral deposition [as it] is neither written, nor is it printed").

[23] *Chapman*, 969 F.2d at 164 (quoting *Meyerland*, 960 F.2d at 516).

[24] *Bosky*, 288 F.3d at 211–12 (explaining that "removal statutes are to be construed strictly against removal and for remand") (quoting *Eastus v. Blue Bell Creameries, L.P.*, 97 F.3d 100, 106 (5th Cir. 1996)).

their factual basis can be proven by a preponderance of the evidence through a simple and short statement." *Id.* at 211. Here, if we were to require removal on the day of the oral deposition, defendants are likely to remove immediately upon any whiff that removal is proper and before having the chance to review the record and confirm that they in fact can remove.[25] Thus, it promotes the purpose of the statute to begin the removal clock on receipt of the transcript.

There are several policy considerations advanced by the parties and the district court. Though all have merit, the considerations favoring the transcript approach are more persuasive. Morgan and the district court primarily rely on the concern expressed in *Huffman v. Saul Holdings Limited Partnership*, 194 F.3d 1072, 1078 (10th Cir. 1999), that "the date of receipt of a transcript may also be subject to manipulation," given that "the applicable rule of civil procedure does not provide a deadline for obtaining a transcript of a deposition, *see* FED. R. CIV. P. 30(b)(2), (f)(2)."[26] Thus, theoretically defendants

---

[25] Additionally, at the time of its enactment, various "methods of oral notification," such as "[d]epositions, telephone conversations and other oral testimony existed in the litigation process." Clanton, *supra* note 22, at 399. "Congress was quite capable of recognizing the possible disconnect between deposition testimony and deposition transcripts and the effects it would have on removal procedure when it . . . include[d] 'other paper.'" *Id.*

[26] The district court and Morgan also reference three cases in the Third, Sixth, and Ninth Circuit as supporting the position that the removal clock begins on the date of the deposition. None of those circuits, however, actually addressed the issue of deposition testimony versus transcript. These cases are better characterized as standing for the general idea that a deposition can constitute an "other paper" than for actually deciding whether the defendant must remove within thirty days of the testimony or the transcript. *See Papp v. Fore-Kast Sales Co.*, 842 F.3d 805, 816 n.10 (3d Cir. 2016) (noting that the plaintiff "concede[d] that answers to deposition questions 'can constitute "other paper" for purposes of triggering the time for removal.'"); *Peters v. Lincoln Elec. Co.*, 285 F.3d 456, 465–66 (6th Cir. 2002) (citing *S.W.S. Erectors* for the proposition that "a plaintiff's responses to deposition questioning may constitute an 'other paper'"); *Carvalho v. Equifax Info. Serv., LLC*, 629 F.3d 876, 886–87 (9th Cir. 2010) ("[A] plaintiff's response to deposition questions can constitute 'other paper'.").

Moreover, these decisions are distinguishable. They involved removals within thirty days of the deposition. *See Papp*, 842 F.3d at 816 n.10 ("As a result, the relevant date for determining the timeliness of Boeing's motion to remove was the September 5, 2013

could delay ordering the transcripts and thus buy extra time. Based on that policy concern, the Tenth Circuit held that "the removal period commences with the giving of the testimony."[27]

But, Avondale contends that depositions often last months.[28] Requiring counsel to file on the date of the oral testimony may involve filing before a deposition is complete and all the relevant information is obtained. The length and complexity of a deposition may thereby compel defendants to file more protective removals.

---

deposition of Mary Papp, and Boeing's October 4, 2013 filing was therefore timely."); *Peters*, 285 F.3d at 466 ("Plaintiff does not dispute that Defendant Lincoln filed its Notice of Removal of this case within 30 days of the date of his deposition."); *Carvalho*, 629 F.3d at 887 ("[T]he notice of removal was filed within thirty days of Carvalho's deposition testimony.").

Curiously, the opinions of the district court *a quo* and the Sixth Circuit in *Peters* rest in part on a misquoting of our opinion in *Addo*. Specifically, the district court and the Sixth Circuit represent that the following appears in *Addo*:

Holding that a plaintiff's deposition testimony may be an "other paper" under § 1446(b) is consistent with the purpose of the removal statute to encourage prompt resort to federal court when a defendant first learns that the plaintiff is alleging a federal claim.

*Peters*, 285 F.3d at 466. But *Addo* says nothing about "deposition testimony." Instead, the issue was whether a post-complaint demand letter could constitute "other paper" under the removal statute. *See Addo*, 230 F.3d at 761–62. *Addo* actually says, "Holding that a *post-complaint letter, which is not plainly a sham*, may be 'other paper' under § 1446(b) is consistent with the purpose of the removal statute . . . ." *Id.* at 762 (emphasis added) (footnote omitted). *Addo* thus does not answer the question presented.

Morgan separately cites *Atwell v. Boston Sci. Corp.*, 740 F.3d 1160 (8th Cir. 2013). There, the Eighth Circuit quickly held that "oral statements, made at a court hearing and *later transcribed*, like deposition testimony, satisfy § 1446(b)(3)'s 'other paper' requirement." *Id.* at 1162 (emphasis added). It noted, "The thirty-day time limit begins running when a plaintiff 'explicitly discloses' she is seeking a remedy that affords a basis for federal jurisdiction." *Id.* That opinion provides no reasoning, so to the extent it can be read as disagreeing with our approach, it is unpersuasive.

[27] *Huffman*, 194 F.3d at 1078. "[T]he notice of removal was untimely if [the] deposition testimony provided sufficient notice that the amount in controversy exceeded the jurisdictional minimum." *Id.* at 1079.

[28] For instance, in the instant case the pertinent deposition was taken over a period of eight days during a one-month period.

Additionally, a removing defendant bears the burden of pointing to the evidence demonstrating that removal is proper.[29]  Where a removal is based on a statement made during the deposition, the transcript will often be used to evidence the alleged statement.  Thus, it is counterintuitive to start the clock before obtaining the very evidence the defendant will rely on to support removal.  Even under the Tenth Circuit's "notice" standard, it is likely that a district court will need to sift through the deposition to determine whether the answer was "clear and unequivocal" enough to trigger the thirty days.[30]  The main way to sift through the deposition will of course be to look at the transcript.  In fact, that is exactly what Morgan does in his brief to show that "Avondale was well aware of the implication of [Morgan's] testimony with respect to its planned removal."  Morgan devotes nearly two pages to combing the transcript.

Our past cases concerning "other paper" suggest that these latter concerns carry more weight.  In *S.W.S. Erectors,* 72 F.3d at 491, along with the deposition issue, we also addressed whether an affidavit created by the defendant's counsel alleging removable facts "learned during a telephone conversation with [plaintiff's] attorney" was an "other paper" starting the removal clock.  We rejected that contention, as "the defendant's subjective knowledge

---

[29] *See Bosky*, 288 F.3d at 211 ("It should also discourage removals before their factual basis can be proven by a preponderance of the evidence through a simple and short statement of the facts."); § 1446(a) ("[D]efendants desiring to remove . . . shall file . . . a short and plain statement of the grounds for removal . . . .").

[30] *See Bosky*, 288 F.3d at 211 ("[T]he information supporting removal in a copy of an amended pleading, motion, order or other paper must be 'unequivocally clear and certain' to start the time limit running."); *see also Cole ex rel. Ellis v. Knowledge Learning Corp.*, 416 F. App'x 437, 440 (5th Cir. 2011) (explaining that "[a] discovery response may constitute an 'other paper'" where such response is "'unequivocally clear and certain,' so that defendant may ascertain the action's removability").

cannot convert a case into a removable action." *Id.* at 494.[31]  Thus, to remove, a defendant needs more than his own averment in a removal petition that a favorable answer was provided during a deposition.[32]

Moreover, *Bosky*, 288 F.3d at 211, counsels against a rule that would increase "protective" removals.[33]  Though it is true that the Federal Rules do not set a deadline for obtaining a transcript, that one negative policy implication is not enough to outweigh our precedent, the plain meaning of § 1446(b)(3), and the contrary policy considerations.[34]  "In short, a bright-line rule should create a fairer environment for plaintiffs and defendants."[35]

We adopt a bright-line rule today:  Section 1446(b)(3)'s removal clock begins ticking upon receipt of the deposition transcript.  Avondale thus timely removed within thirty days of receiving the deposition transcript.

## IV.

Morgan alternatively requests that we affirm the remand based on Avondale's failure to meet the substantive requirements of federal officer removal.

---

[31] S*ee also Chapman*, 969 F.2d at 163 (noting, in the context of § 1446(b)(1), that "[w]e adopt this rule because we conclude that it promotes certainty and judicial efficiency by not requiring courts to inquire into what a particular defendant may or may not subjectively know").

[32] *See Addo*, 230 F.3d at 762 (noting "our rule that 'other paper' must result from the voluntary act of a plaintiff which gives the defendant notice of the changed circumstances which now support federal jurisdiction.").

[33] S*ee also Chapman*, 969 F.2d at 163 (adopting a rule for § 1446(b)(1) removal because a contrary rule would "encourage defendants to remove prematurely cases . . . to be sure that they do not accidentally waive their right to have the case tried in a federal court.").

[34] Additionally, § 1446(c)(1) places a one-year deadline on removal for diversity cases, which should help curtail some potential manipulation.

[35] *Bosky*, 288 F.3d at 211 ("[A] clearer threshold promotes judicial economy."); s*ee also Chapman*, 969 F.2d at 163 ("We believe the better policy is to . . . adopt[ ] a bright line rule . . . .").

"'It is the general rule, of course, that a federal appellate court does not consider an issue not passed upon below.'"[36]  Because Morgan's death eliminates any need for an expedited appeal, there is "no reason to alter the normal course" of remanding this issue to the district court.[37]

Accordingly, the order of remand to state court is VACATED, and this matter is REMANDED to the district court for further proceedings as needed. We place no limitation on the matters that the district court may address, as needed, on remand.

---

[36] *Humphries v. Elliott Co.*, 760 F.3d 414, 418 (5th Cir. 2014) (quoting *Singleton v. Wulff*, 428 U.S. 106, 120 (1976)). *Accord Savoie*, 817 F.3d at 466 ("As the district court never had the opportunity to consider whether these defenses are colorable, we will remand to allow it to do so in the first instance.").

[37] *Humphries*, 760 F.3d at 418 (refusing to determine whether federal officer jurisdiction was proper in the context of an expedited appeal).