Jeffrey PETTY, et al, Plaintiffs,

v.

**PORTOFINO COUNCIL OF COOWNERS, INC.,**
Defendant.

Civil Action No. C–09–149.

United States District Court,
S.D. Texas,
Corpus Christi Division.

March 12, 2010.

Stephen J. Chapman, Chapman Law Firm, Rolando Luis Leon, Baker Leon et al., Corpus Christi, TX, for Plaintiffs.

Myra Kay Morris, Brian Charles Miller, Royston Rayzor, Corpus Christi, TX, for Defendant.

## ORDER

JANIS GRAHAM JACK, District Judge.

On this day came on to be considered Defendant's Motion to Dismiss. (D.E. 16.) For the reasons stated herein, Defendant's Motion to Dismiss is DENIED in part and GRANTED in part, as follows:

This Court DENIES Defendant's Motion to Dismiss with respect to:

(1) Fair Housing Act claims brought under 42 U.S.C. §§ 3604(a)-(c), (f), and 3617;

(2) Fair Housing Act claims based on events that occurred before May 8, 2007 which are offered as evidence of continued violations of the Fair Housing Act;

(3) Intentional Infliction of Emotional Distress claims based on events that occurred on or after May 8, 2007; and

(4) Claims for defamation, libel, and slander.

The Court GRANTS Defendant's Motion to Dismiss with respect to:

(1) Intentional Infliction of Emotional Distress claims based on events that occurred before May 8, 2007;

(2) Negligent Misrepresentation; and

(3) Breach of Fiduciary Duty.

## I. Jurisdiction

The Court has federal question jurisdiction over this case pursuant to 28 U.S.C. § 1331. This Court has supplemental jurisdiction over the state causes of action pursuant to 28 U.S.C. § 1367(a).

## II. Procedural Background

On June 25, 2009, Jeff and Cindy Petty, individually and as next friends of their children Karis, Christopher, and Jeffrey ("Plaintiffs"), filed their original complaint with this Court against Portofino Council of Co–Owners, Inc. ("Defendant"). (D.E. 1.) Plaintiffs charged Defendant with violating the Fair Housing Act, Title VIII of the Civil Rights Act of 1968, codified as 42 U.S.C. § 3601 et seq. ("FHA"), and the following state law claims: defamation, libel, slander, negligent misrepresentation, breach of fiduciary duty, and intentional infliction of emotional distress. (D.E. 14.) After Plaintiffs amended their complaint, Defendant responded with a Motion to Dismiss, which this Court now considers. (D.E. 16.)

## III. Factual Background

In 2005, Plaintiffs moved to Corpus Christi, Texas, and purchased Condominium Unit 207 at the Portofino Condominiums. (D.E. 14, p. 2.) Plaintiffs' Complaint alleges a long list of harassing behavior by Defendant.

First, Plaintiffs allege that in July 2008, their phone service was disconnected by Defendant. This disconnection occurred at the same time that Plaintiffs' son, Jeffrey, became ill. Jeffrey's sister, Karis, was unable to call the Plaintiffs because the phone had been "cut off." (D.E. 14, p. 3.) Plaintiffs are especially concerned about Jeffrey because he is deaf. Plaintiffs contacted the President of the Board of Directors about this incident, but "he would not inform them why the services were disconnected." (D.E. 14, p. 3.)

Plaintiffs further allege that on February 27, 2009, they obtained a service dog for Jeffrey. Prior to acquiring the get service dog, Plaintiffs requested permission from Defendant to allow a dog in their condominium as a reasonable accommoda-

tion for their son. Plaintiffs allege that instead of granting approval, Defendant demanded that Plaintiffs remove the dog from their condominium. However, after being contacted by the Plaintiffs' attorney, the Defendant allowed the dog to remain. Plaintiffs allege that Defendant has "since interfered with the dog[']s use and have not attempted in any way to accommodate the dog[']s service." (D.E. 14, p. 3.) For example, Plaintiffs allege that on about April 24, 2009, the building manager stopped their son, Christopher, when he was taking the dog outside. Soon thereafter, Christopher was confronted by the board's president who told him, "Children are not allowed in the common areas," and threatened to fine the Plaintiffs. Plaintiffs allege that Christopher is now afraid to take the dog out of the condominium. On April 29, 2009, the Defendant sent Plaintiffs "a letter stating Christopher cannot take the service animal out of the building to the restroom." On May 6, 2009, Plaintiffs received a $100 fine by the Defendant for the service dog. (D.E. 14, p. 4.)

Plaintiffs' other allegations of harassment include Defendant's failure to have a pedestrian exit from the parking lot, (D.E. 14 p. 4); failure to fix an electric gate, (D.E. 14, p. 5); failure to allow condominium owners to store bicycles and wheeled toys in the condominium, (D.E. 14, p. 5); issuance of fines without reason, (D.E. 14, p. 7); and, at various times, prohibition of children from the common areas, elevators, pool, and work out room, (D.E. 14, p. 7–8). Plaintiffs also allege that the Defendant has uniformly rejected rental applications submitted by families. (D.E. 14, p. 7–8.)

On August 1, 2008, Plaintiffs contracted with potential buyers Jaime Martinez and Christalinda Perez to sell their condominium. At a pre-sale meeting among Plaintiffs, Defendant, and the potential buyers, "the buyers informed the Pettys that they were intimidated by the Board and the rules regarding the children." (D.E. 14, p. 5.) After attending a board meeting, the potential buyers informed the Plaintiffs "that the housing environment was not suited or safe for their family." (D.E. 14, p. 5–6.)

Plaintiffs allege that at a board meeting Defendant stated that Plaintiff Jeff Petty was "a person of interest" and a "hacker" who had committed "multiple criminal violations," including "criminal access" of the personal information of other home owners. (D.E. 14, p. 8.) Plaintiffs allege that these allegations were made both orally at a board meeting and in a memorandum distributed to the homeowners despite the fact that the Defendant's computer technician found no supporting evidence of unlawful activity by Plaintiffs. (D.E. 14, p. 8.) Plaintiffs allege that these remarks were made in front of potential buyers of Plaintiffs' condominium and resulted in the repudiation of a sales contract. (D.E. 14, p. 11.)

## IV. Discussion

### A. Motion to Dismiss Standard

A motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) "is viewed with disfavor and is rarely granted." *Lowrey v. Texas A & M Univ. Sys.*, 117 F.3d 242, 247 (5th Cir.1997). A district court cannot dismiss a complaint, or any part of it, for failure to state a claim upon which relief can be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir.1995).

In reviewing a Rule 12(b)(6) motion, the court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the

plaintiff. *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir.1996); *see Ashcroft v. Iqbal*, — U.S. ——, 129 S.Ct. 1937, 1940–41, 173 L.Ed.2d 868 (2009) ("When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."). Mere conclusory allegations are not enough to avoid dismissal. *Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir.1992). "While legal conclusions can provide the complaint's framework, they must be supported by factual allegations." *Iqbal*, 129 S.Ct. at 1940. To survive a motion to dismiss, the Plaintiffs need to plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S.Ct. at 1949. Pleading "facts that are merely consistent with a defendant's liability" stops short of defeating a motion to dismiss. *Id.*

██ In ruling on a motion to dismiss, the court generally cannot look beyond the pleadings.[1] *Id.; Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir.1999), cert. denied, 530 U.S. 1229, 120 S.Ct. 2659, 147 L.Ed.2d 274 (2000). Indeed, it is proper for a district court to refuse to consider new allegations outside the well-pleaded facts in the complaint in reviewing a Rule 12(b)(6) dismissal. *See Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 340 (5th Cir. 2008) (finding that because a 12(b)(6) "review is limited to his complaint and its proper attachments, we may not consider any additional evidence or pleadings."); *Fin. Acquisition Ptnrs. v. Blackwell*, 440 F.3d 278, 289 (5th Cir.2006) (affirming district court's refusal to review facts outside of complaint when reviewing 12(b)(6) motion); *Orthopro, Inc. v. Arthrex, Inc.*, 2009 WL 1374773, 2009 U.S. Dist. LEXIS 41697 (N.D.Tex. May 18, 2009) (stating that "court will not consider [a letter attached to 12(b)(6) pleadings but not mentioned in the complaint] in ruling on the motion to dismiss."); *In re: UICI Sec. Litig.*, 2006 U.S. Dist. LEXIS 73753 (N.D.Tex. Sept. 29, 2006) (treating 12(b)(6) as a motion for failure to state a claim and refusing to consider "extrinsic evidence" submitted with the pleadings).

██ The ultimate question in a Rule 12(b)(6) motion is whether the complaint states a valid cause of action when it is viewed in the light most favorable to the plaintiff and with every doubt resolved in favor of the plaintiff. *Lowrey*, 117 F.3d at 247.

## B. Fair Housing Act

The Fair Housing Act ("FHA") "generally prohibits discrimination in the sale or rental of housing." *Avalon Residential Care Homes, Inc. v. GE Fin. Assur. Co.*, 2002 WL 32359947, *2, 2002 U.S. Dist. LEXIS 20032, *4 (N.D.Tex. Oct. 17, 2002). "The FHA, as originally enacted in 1968, prohibited discrimination based on race,

---

1. One exception to this rule is that on a 12(b)(6) motion, a court may consider materials outside the complaint if the materials "are referred to in the plaintiff's complaint and are central to her claim." *See Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir.2000). When these two elements are present, the Fifth Circuit allows a court to consider such material because, by attaching the exhibits, "the defendant merely assists the plaintiff in establishing the basis of the suit, and [assists] the court in making the elementary determination of whether a claim has been stated." *See Collins*, 224 F.3d at 498–99 (finding appropriate trial court's consideration of documents attached to motion to dismiss where documents were basis for plaintiff's securities fraud claim); *Lovelace v. Software Spectrum, Inc.*, 78 F.3d 1015, 1017–18 (5th Cir.1996) (finding court can consider SEC filings not attached to the complaint when determining whether plaintiff states a valid securities fraud claim); *Busch v. Viacom Int.*, 477 F.Supp.2d 764, 775 n. 6 (N.D.Tex. 2007) (considering tape of public broadcast attached as an exhibit to defendant's motion to dismiss because it is the basis for plaintiff's defamation claim).

color, religion, or national origin." *City of Edmonds v. Oxford House, Inc.,* 514 U.S. 725, 728 n. 1, 115 S.Ct. 1776, 131 L.Ed.2d 801 (1995). "In 1988, Congress extended coverage to persons with handicaps and also prohibited 'familial status' discrimination, i.e., discrimination against parents or other custodial persons domiciled with children under the age of 18." *Id.* (citing 42 U.S.C. § 3602(k)).

Plaintiffs assert claims under five provisions of the FHA: § 3604(a) (making it unlawful to discriminate in making available a dwelling); § 3604(b) (making it unlawful to discriminate in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith); § 3604(c) (making it unlawful to print or publish discriminatory statements with respect to sale or rental of a dwelling); § 3604(f)(3)(B) (making it unlawful to discriminate because of a handicap); and § 3617 (making it unlawful to coerce, intimidate, threaten, or interfere with a person based on his aiding or encouraging another in the exercise or enjoyment of fair housing rights). Plaintiffs claim involve two types of discrimination: discrimination based on familial status under §§ 3604(a)-(c) and 3617, and discrimination based on disability under §§ 3604(f) and 3617. This Court will consider these claims separately.

### C. Familial Status Claims

Plaintiffs assert that Defendant has discriminated against them on the basis of familial status in violation of 42 U.S.C. §§ 3604(a)-(c) and 3617. (D.E. 14.) Section 3604 of the FHA states, in pertinent part, that:

[I]t shall be unlawful:

(a) To refuse to sell or rent after the making of a bona fide offer, or to refuse to negotiate for the sale or rental of, or otherwise make unavailable or deny, a dwelling to any person because of race, color, religion, sex, familial status, or national origin.

(b) To discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, sex, familial status, or national origin.

(c) To make, print, or publish, or cause to be made, printed, or published any notice, statement, or advertisement, with respect to the sale or rental of a dwelling that indicates any preference, mitation, or discrimination based on race, color, religion, sex, handicap, familial status, or national origin, or an intention to make any such preference, limitation, or discrimination.

42 U.S.C. §§ 3604(a)-(c).

Section 3617 of the FHA states, in pertinent part, that:

It shall be unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by [the FHA].

42 U.S.C. § 3617.

■ To prove a familial status discrimination claim under §§ 3604(a)-(b), and 3617, Plaintiffs must show that Defendant's discrimination affected the availability of housing, not merely the habitability of housing.[2] *See, e.g., Cox v. City of Dal-*

---

**2.** Defendant argues that claims under 42 U.S.C. § 3604(c) also requires this showing. (D.E. 16, p. 3–5.) However, this Court need not address this question because this Court

finds that Plaintiffs state a claim for familial status discrimination under 42 U.S.C.

las, 430 F.3d 734, 741–47 (5th Cir.2005) (finding that both §§ 3604(a)-(b) requires a showing that discrimination affected housing availability); *Meadowbriar Home for Children, Inc. v. Gunn,* 81 F.3d 521, 531 (5th Cir.1996); *Reule v. Sherwood Valley I Council of Co–owners, Inc.,* 235 Fed.Appx. 227, 227–28 (5th Cir.2007) (finding that § 3617 requires a showing that discrimination affected housing availability); *Avalon Residential Care Homes, Inc. v. GE Fin. Assur. Co.,* 2002 WL 32359947, 2002 U.S. Dist. LEXIS 20032 (N.D.Tex. Oct. 17, 2002). The habitability of a home is generally understood as the value or the ability of a resident to enjoy a home. *See Cox,* 430 F.3d at 744. In contrast, a home's availability refers to the ability to acquire or sell the home. *See id.* at 744 (finding that discrimination affects a property's availability when "specific sales and purchases were being blocked"). The Fifth Circuit has found that while excluding or "steering" one group away from certain areas of a housing complex does implicate availability of housing, failing to police an illegal dump near a housing complex does not. *Cox v. City of Dallas,* 430 F.3d at 741–742 (citing *Evans v. Tubbe,* 657 F.2d 661, 663 n. 3 (5th Cir.1981) (erecting gate across the only access road to properties and giving gate keys only to white owners

made properties "unavailable" under § 3604(a)); *United States v. Mitchell,* 580 F.2d 789, 790–91 (5th Cir.1978) (steering black to one section of large housing complex and indicating that no other vacancies were available violated § 3604(a))).

### 1. Plaintiffs Allege Family Status Discrimination That Affects the Availability of Housing

 To survive Defendant's Motion to Dismiss, Plaintiffs' familial status claims must allege that Defendant's actions affected the availability of housing.[3] Plaintiffs' family status claims withstand Defendant's Motion to Dismiss because Plaintiffs' allege that: (1) the condominium complex was not made available to their children,[4] and (2) a contract to sell their condominium was blocked because of Defendant's discriminatory practices against families. (D.E. 14, p. 5.) Both these allegations implicate the availability of housing. Discrimination that leads to a loss of a specific sale makes housing unavailable. *See Cox,* 430 F.3d at 744 (finding remedies under § 3604(a) are available to "current homeowners [when] the heart of the case [is] about unavailability for buyers—specific sales and purchases were being blocked"). Similarly, denying

§ 3604(c) even if an availability showing is required.

**3.** Defendant argues in its Reply to the Motion to Dismiss that Plaintiffs do not have standing to bring a familial status discrimination claim under the FHA because they have not "suffered a distinct and palpable injury." (D.E. 21, p. 5.) This Court need not address any new issues brought in Defendant's reply brief because "the scope of the reply brief must be limited to addressing the arguments raised by the [response]." *Staton Holdings, Inc. v. First Data Corp.,* 2005 WL 2219249, 2005 U.S. Dist. LEXIS 19743 (N.D.Tex. Sept. 9, 2005) (citing *U.S. v. Feinberg,* 89 F.3d 333, 340–341 (7th Cir.1996)). However, this Court finds that Plaintiffs have standing because they

claim Defendant's discriminatory actions resulted in the loss of the sale of their condominium. (D.E. 14, p. 5.) *See Newsom v. Brod,* 89 S.W.3d 732, 735 (Tex.App.-Houston 2002) (finding that "[p]ecuniary loss refers to loss that has been realized or liquidated, as in the case of specific loss of sales") (internal citations omitted).

**4.** Plaintiffs' allegations show that Defendant has rendered the apartment complex almost uninhabitable by: prohibiting Plaintiffs' children from the condominium's common areas, disabling Plaintiffs' phone, disabling the electric gate used by Plaintiffs' children to enter the complex, and directing the condominium manager to not let the children inside the complex. (D.E. 14, pp. 3–5.)

a protected group access to property and steering them away from certain areas makes housing unavailable. *See Evans,* 657 F.2d at 663; *Mitchell,* 580 F.2d at 790–91. Therefore, this Court will not grant Defendant's Motion to Dismiss §§ 3604(a)-(c), and 3617 on the basis of a failure to plead discrimination affecting the availability of housing.

### D. Disability Claims

In addition to bringing claims based on familial discrimination, Plaintiffs also bring disability discrimination claims under § 3604(f) and 3617. (D.E. 14.) Section 3604(f) of the Fair Housing Act states, in pertinent part, that:

[I]t shall be unlawful:

(1) To discriminate in the sale or rental, or to otherwise make unavailable or deny, a dwelling to any buyer or renter because of a handicap . . . ;

(2) To discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of a handicap . . .

(3) For purposes of this subsection, discrimination includes . . .

(A) . . .

(B) a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling.

42 U.S.C. § 3604(f).

Defendant argues that just like §§ 3604(a)-(b), to claim disability discrimination under § 3604(f), Plaintiffs must show that the discrimination affected the availability of their housing. (D.E. 16, p. 6.) This Court agrees.

The Fifth Circuit has explained that §§ 3604(a) and 3604(f)(1) are "analogous" provisions and the language used in both provisions do not offer "limitless" protections. *Cox,* 430 F.3d at 740 ("In an analogous context, we have stated that 'although the 'otherwise make available or deny' phrase seems all-encompassing, its scope is not limitless.'") (citing *Meadowbriar Home for Children, Inc. v. Gunn,* 81 F.3d 521, 531 (5th Cir.1996) (narrowly construing FHA § 3604(f))). The Fifth Circuit concluded that the language of this provision limits recovery only when discrimination affects the availability of housing. *See Cox,* 430 F.3d at 741–46 (finding §§ 3604(a)-(b) require a showing that housing is unavailable).

One reason the Fifth Circuit deemed these provisions "analogous" is that the statutory language of 3604(b) and 3604(f) are strikingly similar. Section 3604(a) uses the same "sale or rental" or "otherwise make available" language as Section 3604(f)(1).[5] Similarly, Section 3604(b) uses the same "in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection" language as Section 3604(f)(2).[6] Because these provisions are

---

5. *Compare* 42 U.S.C. § 3604(a) (It shall be unlawful "to refuse to sell or rent after the making of a bona fide offer, or to refuse to negotiate for *the sale or rental of, or otherwise make unavailable or deny,* a dwelling to any person because of race, color, religion, sex, familial status, or national origin") (emphasis added) *with* 42 U.S.C. § 3604(f)(1) (It shall be unlawful to "[t]o discriminate in *the sale or rental, or to otherwise make unavailable or deny,* a dwelling to any buyer or renter because of a handicap") (emphasis added).

6. *Compare* 42 U.S.C. § 3604(b) (It shall be unlawful "[t]o discriminate against any person *in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection* therewith") (emphasis added) *with* 42 U.S.C. § 3604(f)(2) (It shall be unlawful to "[t]o discriminate against any person *in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection* with such dwelling, because of a handicap") (emphasis added).

analogous, this Court concludes that, just like §§ 3604(a)-(b), §§ 3604(f)(1)-(2) require the Plaintiffs to show that Defendant's discrimination deprived them of the availability of housing.[7] *See Cox,* 430 F.3d at 741–46.

### 1. Plaintiffs Allege Disability Discrimination That Affects the Availability of Housing

 Under § 3604(f), a defendant is liable if it makes property unavailable by refusing to "make reasonable accommodations ... when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling." *See* 42 U.S.C. § 3604(f)(3)(B). Plaintiffs allege that after they obtained a service dog, Defendant fined them and sent them a letter stating that "Christopher cannot take the service animal out of the building to the restroom." (D.E. 14, p. 4.) By steering the service animal away from the common areas outside the building, Defendant has made the condominium complex unavailable and has failed to provide reasonable accommodations.[8] *Cox,* 430 F.3d at 742–43; *Evans,* 657 F.2d at 663; *Mitchell,* 580 F.2d at 790–91. Therefore, Plaintiffs state a claim of disability discrimination affecting the availability of housing.

### E. Defamation, Libel, and Slander Claims

 Plaintiffs' Complaint alleges that Defendant committed defamation, libel, and slander. (D.E. 14, p. 8.) "To state a claim for defamation ... a plaintiff must demonstrate that the defendant published a defamatory statement about him while acting with negligence regarding the truth of the statement." *Ameen v. Merck & Co.,* 226 Fed.Appx. 363, 370 (5th Cir.2007) (internal citations omitted). Specifically, "the plaintiff must prove that the defendant: (1) published a statement; (2) that was defamatory concerning the plaintiff; (3) while acting with ... negligence ... regarding the truth of the statement." *See WFAA–TV, Inc. v. McLemore,* 978 S.W.2d 568, 571 (Tex.1998) (citing *Carr v. Brasher,* 776 S.W.2d 567, 569 (Tex.1989)). Defamation is also a required element to both Plaintiffs' libel and slander claims. For example, to prove libel, a plaintiff must allege defamation that is expressed in writing. *Belli v. Orlando Daily Newspapers, Inc.,* 389 F.2d 579, 582 (5th Cir.1967) (citing TEX.CRIM. PRAC. & REM.CODE 73.001). To prove slander, a plaintiff must allege a false, oral defamatory statement, published to a third person without legal justification or excuse. *Randall's Food Markets, Inc. v. Johnson,* 891 S.W.2d 640, 646 (Tex. 1995).

Defendant makes two arguments to dismiss Plaintiffs' defamation, libel, and slander claims. First, Defendant argues that this Court does not have jurisdiction to hear the claims as pendent claims because they are not sufficiently related to the FHA claims which give this Court jurisdiction. (D.E. 16, p. 9–11.) Second, Defendant argues that Plaintiffs have failed to meet the prima facie case for their defama-

---

7. Other courts in this circuit agree. *See Avalon Residential Care Homes, Inc. v. GE Fin. Assur. Co.,* 2002 WL 32359947, 2002 U.S. Dist. LEXIS 20032 (N.D.Tex. Oct. 17, 2002) (finding that 3604(f) claim fails because Defendant did not make housing "unavailable" and has not denied Plaintiffs' "right to reside at the facility").

8. This Court finds that the Complaint sufficient pleads that the dog was a "service" animal by stating that the dog was obtained "upon their Doctor's recommendation for Jeffrey for his hearing disability." (D.E. 14, p. 3.) This Court also recognizes that service dogs are a common example of a reasonable accommodation for people with disabilities. *See, e.g.,* 24 C.F.R. § 100.204(b)(1) (finding that providing a service dog to a blind housing applicant is an example of reasonable accommodation).

tion-based claims because the defamatory comments do not identify the Plaintiffs, and the Complaint does not allege special damages. (D.E. 16, pp. 11–17.) This Court addresses each of these arguments below.

### 1. This Court has Supplemental Jurisdiction of Plaintiffs' Defamation, Libel, and Slander Claims

Defendant argues in its Motion to Dismiss that this Court should dismiss Plaintiffs' defamation-based claims on the basis of lack of subject matter jurisdiction. (D.E. 16, p. 9.) Specifically, Defendant alleges that this Court does not have supplemental jurisdiction of the claims because they are not "part of the same case or controversy" as the FHA claims which give this Court jurisdiction. (D.E. 16, p. 10.)

■ Supplemental jurisdiction is proper when there is a "common nucleus of operative fact" between the federal claim and supplemental claim. *Whiting v. Univ. of So. Miss.*, 451 F.3d 339, 344 (5th Cir. 2006); *see United Mine Workers of America v. Gibbs*, 383 U.S. 715, 725, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966) ("Where a case is before the court under federal question jurisdiction, pendent-claim jurisdiction over state law claims exists where there is a 'common nucleus of operative fact.'"). Thus, supplemental jurisdiction is conferred onto "matters that are incidental to other matters which are properly before a federal court." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 378, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994).

■ In this case, there are several areas of overlap between Plaintiffs' Fair Housing Act and defamation-based claims: both claims involve the same parties; both claims allege that the Defendant's actions prevented Plaintiffs from selling their condominium; both claims refer to events at the condominium's board meetings; and both claims relate to the same time period.

These facts justify retaining jurisdiction over the defamation claims out of an interest of judicial economy. *See Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 357, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988) (finding district courts have discretion "to deal with cases involving pendent claims in the manner that best serves the principles of economy, convenience, fairness, and comity which underlie the pendent jurisdiction doctrine"). Thus, this Court finds that it has jurisdiction over Plaintiffs' pendent defamation, libel, and slander claims.

### 2. Plaintiffs State a Claim for Defamation, Libel, and Slander

Defendant argues that Plaintiffs' defamation-based claims should be dismissed on the merits because: (1) Plaintiffs fail to show that the defamatory statement identified him, and (2) Plaintiffs fail to plead special damages. (D.E. 16, pp. 11–17.) This Court addresses both arguments below.

### a. Defendant's Alleged Defamatory Statements Sufficiently Identify Plaintiffs

■ To prove defamation, slander, or libel, a plaintiff must show that the alleged defamatory statement is "about" or "concerning" the plaintiff. *Ameen*, 226 Fed. Appx. at 370 ("To state a claim for defamation . . . a plaintiff must demonstrate that the defendant published a defamatory statement about him.") (citations omitted); *Henriquez*, 177 S.W.3d at 252 ("[T]he plaintiff must prove that the defendant: (1) published a statement; (2) that was defamatory concerning the plaintiff."). To show that a defamatory statement is "about" or "concerning" the plaintiff, the plaintiff must show that the statement "referred to the plaintiff" and "sufficiently identif[ied]" the plaintiff. *Henriquez*, 177 S.W.3d at 252.

In this case, Plaintiffs' Complaint specifically alleges that Defendant identified Plaintiff Jeff Petty as a hacker both in writing and orally. (D.E. 14, p. 8.) ("[T]he Board held a meeting on August 9, where Plaintiff Jeff Petty, in front of the other homeowners and his family was termed 'a person of interest' and called a 'hacker' and accused of 'multiple criminal violations.'"). This specific allegation in the Complaint sufficiently pleads that the defamatory remark "referred to the plaintiff." *See Henriquez*, 177 S.W.3d at 252.

However, Defendant also argues that this Court should consider materials attached to its 12(b)(6) motion when determining whether the alleged defamatory statements identified the Plaintiffs. (D.E. 16, Exhs. 1, 2, 3.) Defendant argues that the 12(b)(6) exhibits may be reviewed because "they are referred to in plaintiff's complaint and are central to [their] claim." (D.E. 21, p. 2) (citing *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir.2000)). Even assuming that the board meeting materials attached to Defendant's 12(b)(6) may be considered as part of the Complaint, those materials would not change this Court's holding. The board minutes specify that Plaintiffs' Cindy and Jeff Petty are associated with unit 802, the same unit that the Defendant made statements about criminal activity. (D.E. 16, Exh. 1–A.) If Plaintiffs can show that Jeff Petty was "readily identifiable" as the person Defendant described as a "hacker," Plaintiffs may have a valid defamation, slander, and libel claim. *See Sellards v. Express–News Corp.*, 702 S.W.2d 677, 680 (Tex.App.-San Antonio 1985) ("When a group is named [in a defamatory statement] and the plaintiff is a readily identifiable member of the group, a cause of action for defamation exists if those who know and are acquainted with the plaintiff understand the article refers to the plaintiff.") (citing *Newspapers, Inc. v. Matthews*, 161 Tex. 284, 339 S.W.2d 890, 894

(1960); *Poe v. San Antonio Express–News Corp.*, 590 S.W.2d 537, 542 (Tex.Civ.App.-San Antonio 1979); *Buck v. Savage*, 323 S.W.2d 363, 376–77 (Tex.Civ.App.-Houston 1959)). Thus, the fact that the board meeting minutes do not specifically name Jeff Petty as the suspected hacker does not warrant the dismissal of Plaintiffs' defamation-based claims at this stage. *See id.*

Plaintiffs' Complaint properly alleges that the statements were "about" or "concerning" the Plaintiff Jeff Petty. *See Ameen*, 226 Fed.Appx. at 370; *Henriquez*, 177 S.W.3d at 252. The minutes from the board meeting which Plaintiffs base their claim are not inconsistent with this allegation. (D.E. 16, Exh. 1–A.) Therefore, this Court finds that Plaintiffs' Complaint sufficiently alleges that Defendant's defamatory remarks identified Plaintiff Jeff Petty. (D.E. 14, p. 8.)

#### b. Plaintiffs Plead Special Damages

Defendant also argues that Plaintiffs' defamation-based claims rely on innuendo which requires Plaintiffs to plead special damages in order to recover. (D.E. 16, p. 16–17) (citing *Moore v. Waldrop*, 166 S.W.3d 380, 385 (Tex.App.-Waco 2005) ("[W]hen innuendo is required, it follows that proof of damages must be required as well.")). Under Texas law, special damages or "[p]ecuniary loss refers to loss that has been realized or liquidated, as in the case of specific loss of sales." *Newsom v. Brod*, 89 S.W.3d 732, 735 (Tex. App.-Houston 2002) (citing *Hurlbut v. Gulf Atl. Life Ins. Co.*, 749 S.W.2d 762, 766–67 (Tex.1987)).

Here, Plaintiffs specifically plead that "false statements [concerning the defamation of Jeff Petty] also occurred in the presence of a potential buyer of the unit for sale and resulted in a repudiation of the sale contract." (D.E. 14, p. 11.) The loss of the sale of the condominium is

clearly a pecuniary loss under Texas law. *See Newsom*, 89 S.W.3d at 735 (internal citations omitted). Thus, even assuming that Plaintiffs must use innuendo to prove their defamation-based claims, they have pled special damages.

### F. Negligent Misrepresentation Claim

 Plaintiffs claim that Defendant "negligently misrepresented to other homeowners that Jeff Petty was a hacker who has accessed the personal and financial information of other homeowners." (D.E. 14, p. 11–12.) To prove negligent misrepresentation, a plaintiff must show that: "(1) the representation is made by a defendant in the course of his business, or in a transaction in which he has a pecuniary interest; (2) the defendant supplies 'false information' for the guidance of others in their business; (3) the defendant did not exercise reasonable care or competence in obtaining or communicating the information; and (4) the plaintiff suffers pecuniary loss by justifiably relying on the representation." *Henry Schein v. Stromboe*, 102 S.W.3d 675, 686 n. 24 (Tex.2002) (citing *Federal Land Bank Ass'n v. Sloane*, 825 S.W.2d 439, 442, (Tex.1991)). To establish the fourth element of a negligent representation claim, plaintiffs must plead facts showing that the defendant's misrepresentation "induce[d] them to act or refrain from acting to their detriment." *Shanley v. First Horizon Home Loan Corp.*, 2009 WL 4573582, *14, 2009 Tex. App. LEXIS 9301, *43 (Tex.App.-Houston Dec. 8, 2009). (D.E. 16, p. 18.)

#### 1. Plaintiffs Fail to Plead Negligent Misrepresentation

 Plaintiffs' Complaint does not allege any misrepresentation that they relied on which induced pecuniary loss. (D.E. 14, p. 11–12.) Instead, Plaintiffs' allege that "other homeowners" relied on the misrepresentation causing harm to Plain-

tiff. (D.E. 14, p. 11–12.) Plaintiffs' Complaint fails to allege the fourth element of a negligent misrepresentation claim. *See Henry Schein Inc.*, 102 S.W.3d at 686 n. 24; *Shanley*, 2009 WL 4573582 at *14, 2009 Tex.App. LEXIS 9301 at *43 (granting summary judgment because Defendants misrepresentation was not relied on by plaintiff, even though the misrepresentation may have been relied on by third party). Therefore, Defendant's Motion to Dismiss the negligent misrepresentation claim is GRANTED and the claim is DISMISSED.

### G. Breach of Fiduciary Duty Claim

██ A fiduciary duty "exists where a special confidence is placed in another who, in equity and good conscience, is bound to act in good faith and with due regard to the interest of the one placing confidence." *Stephanz v. Laird*, 846 S.W.2d 895, 901 (Tex.App.-Houston 1993) (citations omitted). "[A] fiduciary relationship is an extraordinary [relationship] and will not be lightly created." *Id.*

#### 1. Plaintiffs Fail to Show that Defendant Owes Plaintiffs a Specific Fiduciary Duty

██ Plaintiffs' Complaint alleges that "Defendant has breached its duty as a fiduciary to the Pettys by discriminating against them on the basis of their familial status, making false statements regarding the [Pettys] and by interfering with the sale of their property to another family." (D.E. 14, p 12.) Plaintiffs' Complaint does not cite any statutory basis for which they claim to be owed a fiduciary duty by the Defendant. Plaintiffs' response to the Motion to Dismiss relies on Texas Property Code § 82.103(a) to establish a fiduciary duty. (D.E. 18, p. 17.) In determining whether Plaintiffs state a claim, this Court will consider whether Defendant owes

them a fiduciary duty under Section 82.103(a).

Texas Property Code § 82.103(a) states in part, "Each officer or member of the board is liable as a fiduciary of the unit owners for the officer's or member's act or omissions." The question this Court must consider is whether Texas Property Code § 82.103(a) confers a fiduciary duty to the unit owners collectively and to each unit owner individually. The Texas Courts of Appeal have already addressed this question. *See Harris v. Spires Council of Co–Owners,* 981 S.W.2d 892 (Tex.App.-Houston 1998). In *Harris,* a co-owner resident hired an employee of his co-owner association to care for him. *Id.* at 894. The caretaker took financial advantage of the resident. *Id.* at 894. The resident sued the defendant co-owner association for breach of a fiduciary duty under Texas Property Code § 82.103(a) arguing that as a co-owner and member of the defendant's co-owner association, defendant owed him a specific fiduciary duty of care. *Id.* at 895. The *Harris* court found that simply because the co-owner was a resident and member of the co-owner association did not create an individual fiduciary duty. *Id.* at 898. The court found that there needs to be some other fact or agreement between the parties that could create the fiduciary duty. *Id.* Because *Harris* made no showing that "such relationship existed," the court dismissed his claim. *Id.*

■ To survive a motion to dismiss, the Plaintiffs need to plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* —— U.S. ——, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009); *Guidry v. Bank of LaPlace,* 954 F.2d 278, 281 (5th Cir.1992) (finding mere conclusory allegations are not enough to avoid dismissal on a 12(b)(6) motion). In this case, Plaintiffs' Complaint makes the conclusory alle-

gation that "Defendant has breached its duty as a fiduciary to the Pettys." (D.E. 14, p. 12.) Plaintiffs fail to plead any facts that could create this fiduciary duty. *See Harris* at 898. Therefore, this Court finds that Plaintiffs have failed to establish a claim against Defendant for breach of a fiduciary duty.

## H. Intentional Infliction of Emotional Distress Claim

Intentional infliction of emotional distress is "first and foremost, a 'gap-filler' tort, judicially created for the limited purpose of allowing recovery in those rare instances in which a defendant intentionally inflicts severe emotional distress in a manner so unusual that the victim has no other recognized theory of redress." *Hoffmann–La Roche, Inc. v. Zeltwanger,* 144 S.W.3d 438, 447 (Tex.2004) (citing *Standard Fruit and Vegetable Co. v. Johnson,* 985 S.W.2d 62, 68 (Tex.1998)). "The tort's 'clear purpose,' [is] 'to supplement existing forms of recovery by providing a cause of action for egregious conduct' that might otherwise go unremedied." *Id.* (citing *Standard Fruit and Vegetable Co.,* 985 S.W.2d at 68 (Tex.1998)).

■ "[I]ntentional infliction of emotional distress occurs when: (1) a person acted intentionally or recklessly; (2) the conduct was extreme and outrageous; (3) the person's actions caused another person's emotional distress; and (4) the emotional distress suffered by the other person was severe." *Bradford v. Vento,* 48 S.W.3d 749, 758 (Tex.2001) (citing *GTE Southwest, Inc. v. Bruce,* 998 S.W.2d 605, 611 (Tex.1999)). To show that conduct was "extreme and outrageous," the conduct must go beyond insults, indignities, and threats. *Hoffmann–La Roche, Inc.,* 144 S.W.3d at 447 (finding that "insults, indignities, threats, annoyances, petty oppressions, or other trivialities" do not

amount to extreme and outrageous conduct). The conduct "must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." *Bradford,* 48 S.W.3d at 758.

### 1. Plaintiffs State a Claim for Intentional Infliction of Emotional Distress

■■■ In this case, Plaintiffs allege that Defendant prevented Plaintiffs' children from using common areas and even entering their own condominium complex after school. (D.E. 14, pp. 3–5.) The complaint states:

> In April of 2009, the electronic entry that the children used to enter the front door [of the condominium complex] was disabled without notice. Upon arriving home from school the children cannot get back into the building. They knock on the door and even though the building manager can see them she just sits and ignores them in the office, despite the fact that the door can be opened by remote from that office … On May 8, 2009 the Pettys received a letter from Board stating the manager was no longer allowed to speak to them and that the manager would not give them the electronic code or let the children in after school.

(D.E. 14, p. 4.)

These actions threaten the safety of children, the most vulnerable members of our society. *See, e.g., International Soc'y for Krishna Consciousness v. Lee,* 505 U.S. 672, 112 S.Ct. 2701, 120 L.Ed.2d 541 (1992) (finding limitations on speech in airports necessary to protect "the most vulnerable," including children); *United States v. Riva,* 440 F.3d 722, 725 (5th Cir.2006) ("Children are more vulnerable than adults."). If Plaintiffs' allegations are to be believed, the management purposely put Plaintiffs' children at risk to avoid the inconvenient presence of children at the condominium. Defendant has created conditions whereby Plaintiffs' children cannot gain access to their own home after school. (D.E. 14, p. 4.) Instead, because the manager will not let the children inside the complex, the children must wait outside of the safety of their home for another resident to let them inside. (D.E. 14, p. 4.) Furthermore, even when the children are able to get inside the condominium, Defendant has prevented them from using the complex's elevators to get to their unit. (D.E. 14, p. 4.) On one occasion, Defendant, without notice, disconnected Plaintiffs' phone, leading to a situation where Plaintiffs' children where unable to contact their parents when their brother, Jeffrey, was sick. (D.E. 14, p. 3.) This alleged conduct seriously endangers these children's safety and goes beyond mere annoyance and is extreme and outrageous. *See Hoffmann–La Roche, Inc.,* 144 S.W.3d at 447. Therefore, this Court finds that Plaintiffs have established a claim for intentional infliction of emotional distress.

### I. Statute of Limitations for Plaintiffs' Fair Housing Act and Intention Infliction of Emotional Distress Claims

Defendant moves to limit Plaintiffs' recovery on their intentional infliction of emotional distress and Fair Housing Act claims to events that occurred on or after May 8, 2007. (D.E. 16, p. 23.) Under the Fair Housing Act, "[a]n aggrieved person may commence a civil action … not later than 2 years after the occurrence … of an alleged discriminatory housing practice." 42 U.S.C. § 3613(a). For the Fair Housing Act claims, Plaintiffs argue that this Court should take notice of claims that occurred before May 8, 2007 because they "show a continuing violation" of the Fair

Housing Act. (D.E. 18, p. 18.) This Court agrees.

▮▮▮ The Fifth Circuit applies the continued violations doctrine in Title VII discrimination cases where there is "an organized scheme leading to and including a present violation, such that it is the cumulative effect of the discriminatory practice, rather than any discrete occurrence, that gives rise to the cause of action." *See Huckabay v. Moore,* 142 F.3d 233, 239 (5th Cir.Tex.1998); *see also Berry v. Bd. Of Supervisors of L.S.U.,* 715 F.2d 971, 981 (5th Cir.1983). Given the "strong similarities between the language, design, and purposes of Title VII and the Fair Housing Act," it is appropriate to apply the continued violation doctrine to Plaintiffs' Fair Housing Act claims. *See Holt v. JTM Indus.,* 89 F.3d 1224, 1229 (5th Cir. 1996) (applying Title VII case law to interpret language in the Fair Housing Act).

▮▮▮ Assuming that Plaintiffs allegations are correct, Defendant has, on a continuing basis, prevented Plaintiffs' children from using the common areas, including barring children from the elevator, pool, lobby and workout room.[9] (D.E. 14, ¶ 6, 12–14, 16.) The cumulative effect of this discrimination has created a permanent condition where children are steered away from the complex's common areas. *See Berry,* 715 F.2d at 981 (finding claims that occurred outside the statute of limitation may be used to show continued discrimination when the discrimination "was all of the same sort, it was continual, and it was a permanent condition"). Plaintiffs

have thus properly alleged a continued violation of the Fair Housing Act and their allegations may remain part of the Complaint as evidence of continued violations of the Fair Housing Act.[10] *See Huckabay,* 142 F.3d at 239.

## V. Conclusion

For the reasons stated above, Defendant's Motion to Dismiss is DENIED in part and GRANTED in part, as follows:

This Court DENIES Defendant's Motion to Dismiss with respect to:

(5) Fair Housing Act claims brought under 42 U.S.C. §§ 3604(a)(c), (f), and 3617;

(6) Fair Housing Act claims based on events that occurred before May 8, 2007 which are offered as evidence of continued violations of the Fair Housing Act;

(7) Intentional Infliction of Emotional Distress claims based on events that occurred on or after May 8, 2007; and

(8) Claims for defamation, libel, and slander.

The Court GRANTS Defendant's Motion to Dismiss with respect to:

(4) Intentional Infliction of Emotional Distress claims based on events that occurred before May 8, 2007;

(5) Negligent Misrepresentation; and

---

9. Plaintiffs allege that this history of continued discrimination against families may date back for 10 years. (D.E. 14, ¶ 17.)

10. Defendant's Motion to Dismiss also seeks to limit the allegations which can be used to find intentional infliction of emotional distress to events that occurred on or after May 8, 2007. (D.E. 16.) Plaintiffs did not respond to this argument. (D.E. 18.) Under

Texas law, "the applicable limitations period for a claim of intentional infliction of emotional distress is two years from the accrual of the cause of action." *See Bhalli v. Methodist Hosp.,* 896 S.W.2d 207, 211 (Tex.App.-Houston 1995); *see also* TEX. CIV. PRAC. & REM.CODE 16.003(a). Therefore, Plaintiffs may only use claims which occur on or after May 8, 2007 to prove intentional infliction of emotional distress.

(6) Breach of Fiduciary Duty.

SIGNED and ORDERED.